53 So.2d 354

## COX v. GOLDSTEIN et al.
### 6 Div. 931.

Supreme Court of Alabama.
March 29, 1951.

Rehearing Denied June 28, 1951.

Ray & Giles, of Birmingham, for appellant.

J. P. Mudd, of Birmingham, for appellees.

LIVINGSTON, Chief Justice.

The record shows an action on the case charging negligence resulting in personal injuries, brought by the appellant, Mrs. Thomas E. Cox, against appellees, Joe Goldstein and The New Williams, a corporation, operating a ladies' ready-to-wear store in Birmingham, Alabama.

The complaint, in its one count, charges simple negligence in the maintenance of the floor of the entrance-way of defendants' store in an unsafe condition for the use of customers entering the store, proximately resulting in plaintiff's sustaining a fall while entering the store for the purpose of making a purchase.

The single error assigned is the action of the trial court in giving, at the written request of defendants, the affirmative charge, with hypothesis.

To sustain the assignment of error, appellant, in brief, states the evidence as follows:

"The evidentiary facts presented by the record are few and simple, and substantially without dispute.

"About the middle of the afternoon on New Year's Eve, 1947, the plaintiff, a widow of middle age, accompanied by another lady, entered the outer lobby or vestibule of the defendants' ladies' ready-to-wear store in Birmingham for the purpose of purchasing a dress. It was raining at the time and had been raining since 11:42 in the morning, the rainfall being described as from 'light' to 'moderate'. The plaintiff was wearing shoes with leather soles and medium heels.

"After traversing a few steps into the entrance-way, the plaintiff's feet slipped forward and out from under her, and she fell upon the floor of the vestibule in a sitting position. When she arose from her fall her hose and clothing were found to be wet and muddy.

"The flooring of the vestibule or entrance-way where plaintiff sustained her fall consisted of a composition called 'terrazzo', which is made of marble chips imbedded in white cement mortar, and nothing more. The defendants' architect-witness described it as not being an 'approved' type floor.

"A sample of this terrazzo flooring was introduced in evidence for the inspection of the jury, and will be available for the inspection of this Court under certificate of the Clerk. It will be readily apparent from examination of this sample that the floor of the vestibule upon which plaintiff "fell was, even in the absence of water, extremely hard, impervious to water, smooth, and slick.

"As will be apparent from the photograph of the entrance-way introduced in evidence and transmitted to this Court the floor of the vestibule was exposed without protection to the weather. In addition to the rainfall at and preceding the plaintiff's injury, gusts of brisk wind were blowing at a velocity of twenty-eight (28) miles per hour.

"This hard and slick-surfaced floor of the vestibule led directly to the door from the public sidewalk, was wet and *very slippery,* and its entire area was 'awfully' wet with muddy water.

"In entering the store, the plaintiff was proceeding at an 'average' walk—she was 'in no rush'.

"As a result of her fall, the plaintiff sustained severe back injury, and was compelled to wear a steel brace, which she was still required to wear at the time of the trial some eighteen months later."

While we do not disagree with appellant's foregoing statement of the evidence, we do think that for the purpose of clarity we may quote the record on the question as to whether the floor was an 'approved' type floor, and, as to whether the water on the floor was 'muddy'.

Mr. James A. Lewis, an architect in the city of Birmingham, Alabama, a witness for defendants, testified, in part, as follows:

"Q. And did you design the present floor and the present front of the building

666

on Third Avenue, known as The New Williams? A. Yes, my firm had that job.

"Q. Yes, sir. And are you familiar with the type and kind of floor that is in the vestibule or the outer entrance leading into the store proper? A. Yes, sir.

"Q. And how would you describe that floor? What type and kind of floor is it? A. Well, that is called a terrazzo floor, and it is—it consists of marble chips imbedded in cement mortar.

"Q. And is that an approved type and kind of floor for use in that particular situation as it was used there? A. No, that floor has been used since the days of the Romans.

"Q. Well, I say, is it standard and approved? A. Oh, yes, sir, yes. I would say most of the stores, commercial stores—

"Q. You said 'no' a moment ago; I didn't know whether you understood my question or not. A. What I meant was, it is not an approved type; it is a very old floor, dating back to—

"Q. Well, it is standard or—A. It is standard; it is a standard floor, yes, sir.

"Q. Do you know of any other buildings up and down Third Avenue there that use that type of floor for an entrance to their stores? A. Well, I think on that side of the street that most of them do. I know Odom, Bowers & White, and next to them is Bond Clothing Company, The Vanity Boot Shop and the Guarantee Shoe Store, I know they all have that same type of floor in the vestibules.

"Q. Is there any such floors here in the Court House? A. All your corridor floors, your lobby floors and your entrance floors on the first floor down there are terrazzo floors.

"Q. When you say 'terrazzo', will you just tell the jury what terrazzo means in the ordinary, every-day language of a layman? A. Well, I just said a minute ago it is nothing more than marble chips imbedded in cement or mixed with cement mortar.

"Q. And was—in the construction of the floor, was it so laid and arranged and designed that there would be drainage from the floor, or not? A. Yes. We have to have slight drainage, otherwise water would run into the building.

"Q. Well, is the drainage from the store to the gutter or the sidewalk? A. Yes.

"Q. And that was adequate to drain any standing water off of that floor? A. Yes."

Mrs. Joe R. Parker, a witness for appellant, and who was with appellant when she fell, testified in part as follows:

"Q. Now, describe to the court and jury the condition of the surface at the point where you say she sat down. A. Well, it was—it had been raining and was raining, and it was slippery. The water had been tracked back and forth in there, and it was very slippery, because it seemed like it was muddy like, not mud, but, you know, how streets and walks are when it has been dragged back and forth, and it was wet and slippery.

"Q. Now, did you observe her clothing after she sat down? A. Yes, sir; I helped her clean her clothes off.

"Q. Maam? A. Yes, sir; I helped her clean her clothes off.

"Q. What was it—what did you observe on her clothing? A. Well, she had this muddy water all on the side of her skirt and her hose, and I helped her clean her skirt off and helped her get it off her clothes and legs.

"Q. Now, did you observe any area there—can you tell the court and jury the extent of the surface that had the substance that you have described? A. Well, I didn't look along the edges where the windows are, but the whole thing seemed wet; it was awfully wet, I am sure, because,—well it was wet all around there where we were. Now, it was slippery and wet."

The evidence is without dispute that appellant went into appellees' store for the purpose of buying a dress. She was an invitee and it was the duty of defendants to exercise reasonable care to keep the premises in a reasonably safe condition. Defendants were no insurers of her safety, but were under a duty to observe reasonable care to see that the premises were reason-

ably safe for her as she came in to make her purchase. F. W. Woolworth v. Ney, 239 Ala. 233, 194 So. 667, and authorities therein cited. Standard Oil Co. v. Gentry, 241 Ala. 62, 1 So.2d 29.

In support of her insistence that the evidence presented a case for the jury appellant cites our cases of Standard Oil Co. v. Gentry, supra; F. W. Woolworth Co. v. Erickson, 221 Ala. 5, 127 So. 534, and several cases decided in other jurisdictions.

We do not think that either of the cited decisions of this court are controlling here. In the Gentry case the

"Plaintiff testified that as he came out of the station office, where he had gone to sign the ticket for his gasoline purchase, and as he stepped down off the step—the first or second step he took after coming down—he struck a spot in 'the pavement that was covered with grease', which caused his fall and rather severe injury resulted. He saw the place after his fall, he states and it was about two feet, 'seemed to be a depression in the concrete where one of the sections had been knocked off and this grease seems to have accumulated in the corner * * * accumulated in the corner of the block * * * It was grease. I say grease; might have been oil originally, and had dirt and dust collected in it, and you could call it grease. * * * It was black, and certainly it was a greasy place.'

"Plaintiff further stated it was 'caked' and appeared to be grease." [241 Ala. 62, 1 So.2d 32.]

In the Erickson case the evidence tended to show that floor cleaning where customer fell was so neglected as to permit accumulation of oil and dust and that such condition had continued for a considerable time. The court said: "It was the custom to oil the floors the last Saturday night in each month, and the accident occurred Tuesday following the last Saturday in May. The condition of this place, 'greasy and oily' and dark colored, on the date of the accident, was shown to have existed for some months previously, and on Saturday preceding the accident another customer appears to have slipped at or about this same locality,

though without resulting in a fall." [221 Ala. 5, 127 So. 537.]

Some of the cases cited by appellant are distinguishable from the case at bar in that they are predicated upon the negligent construction of floors which caused persons to slip and fall, others, because the injuries sustained were inside places of business rather than out of doors or within the entrances of building structures. We will not attempt an analysis of all the cases cited. They are helpful only because of their analogous tendencies and are not decisive.

We agree with counsel for appellant that the evidentiary facts presented by the record are few and simple.

■ There were no defects in the floor of the entrance-way to appellees' store. No claim is made that it was not level other than necessary for proper drainage toward the sidewalk, or that it was improperly constructed or surfaced in any manner. There was no soap, grease or other foreign slippery substance on the floor except rain water which got there in the manner stated. There was no evidence in the case that appellees did anything or omitted to do anything which storekeepers of ordinary care and prudence generally, under similar circumstances, do or omit to do for the protection of the customers.

It is a fact known to all that many stores in all branches of trade have passageway into the store, usually in the middle of the front, on each side of this passageway is a display window. The passageway extends back to the entrance door of the store, usually with a slight slope from the door to the sidewalk to carry away the rain that may blow into the entrance-way. The evidence is without conflict that many stores in Birmingham are similarly situated, have the same type floor and entrance-ways, and that such floors are in common use and have been for years.

It is not the duty of persons in control of such passageways to keep a force of moppers to mop up the rain as fast as it falls or blows in, or is carried in by wet

668

feet or clothing or umbrellas, for several obvious reasons unnecessary to mention in detail.

There was no evidence in this case that appellees did anything or omitted to do anything which storekeepers, of ordinary care and prudence, under similar circumstances do or omit to do for the protection of their patrons. See Kresge v. Fader, 116 Ohio St. 718, 158 N.E. 174, 58 A.L.R. 132; Englehardt v. Phillips, 136 Ohio St. 73, 23 N. E.2d 829; Kraus v. W. T. Grant & Co., 84 Ohio App. 213, 82 N.E.2d 544.

The trial court did not err in giving the affirmative charge for the defendants in the court below.

Affirmed.

FOSTER, LAWSON and STAKELY, JJ., concur.