237 So.2d 456

**Mrs. Nora Beatrice GREER**

v.

**The EYE FOUNDATION, INC., a Corp.**

**6 Div. 524.**

Supreme Court of Alabama.

June 25, 1970.

J. William Wilder, Birmingham, Vernon N. Schmitt, Leeds, for appellant.

Lange, Simpson, Robinson & Somerville, Birmingham, for appellee.

COLEMAN, Justice.

Plaintiff appeals from a judgment for defendant in an action for personal injury allegedly sustained by plaintiff as the proximate consequence of defendant's negligence.

Plaintiff alleges that on June 6, 1965, defendant was operating a hospital at 1720 8th Avenue South in Birmingham; that plaintiff was an invitee at said hospital, and, while she was an invitee, she fell and

suffered certain injuries, to wit: her right arm was fractured, she was permanently injured, she was hospitalized, and she lost time and wages from her work.

Plaintiff alleges that ". . . . defendant negligently caused or negligently allowed the floor of the lobby in said hospital to be and remain in an unsafe condition for members of the public, including the plaintiff, to walk thereon, and as aproximate consequence of said negligence, plaintiff was caused to fall as aforesaid and suffer the aforesaid injuries."

Defendant pleaded the general issue in short by consent with leave, etc.

When plaintiff rested, the court gave to the jury defendant's requested affirmative charge with hypothesis. The jury returned a verdict for defendant, and judgment was rendered in accord with the verdict.

Assignment 1 is that the court erred in giving defendant's requested affirmative charge.

Assignments 2 and 3 are that the court erred in sustaining objections to certain questions propounded by plaintiff to certain witnesses.

Assignments 4, 5, 6, and 7, are, respectively:

"4. The verdict of the jury is contrary to the evidence in the case. (Ts. 11–65)

"5. The verdict of the jury is contrary to the law of the case. (Ts. 5)

"6. The judgment of the Court is contrary to the evidence of the case. (Ts. 11–65)

"7. The judgment of the Court is contrary to the law of the case. (Ts. 6)"

In assigning errors the appellant must specify the action of the trial court of which he would have review and revision. Kinnon v. Louisville & Nashville R. Co., 187 Ala. 480, 482, 65 So. 397; Wetzel v. Hobbs, 249 Ala. 434, 31 So.2d 639;

Thomas v. Brook, 274 Ala. 462, 149 So.2d 809.

■ Assignments 4, 5, 6, and 7 allege no error by the trial court in any respect and present nothing for review. Life & Casualty Inc. Co. of Tennessee v. Womack, 228 Ala. 70, 151 So. 880; King v. Jackson, 264 Ala. 339, 87 So.2d 623; Bertolla v. Kaiser, 267 Ala. 435, 103 So.2d 736; Thomas v. Brook, supra; State v. Young, 281 Ala. 349, 202 So.2d 714; Thornton v. Tutt, 283 Ala. 72, 214 So.2d 425.

### Assignment 1.

Plaintiff testified that on the date of her injury, June 6, 1965, she was a private nurse and had been assigned to a patient in defendant's hospital. She had gone on duty at 7 a. m. on that day and worked until a few minutes before 7 p. m., remaining in the hospital throughout the twelve-hour period. When her relief came a few minutes before 7 p. m., plaintiff got on the elevator on the second floor and went down to the lobby on the first floor. As she was leaving the elevator she noticed through the front glass door that it was raining. When she got off the elevator was the first time she knew it was raining. She does not know how long it had been raining.

When she got off the elevator, she walked over to the desk, put a Sunday paper down, took up one section of it to put over her head. As she started toward the front door, she started slipping, "skeeting." Her feet were "skeeting." She fell and suffered the injury for which she sues. Her uniform was wet from her hips to her shoulders.

Plaintiff was hospitalized at defendant's hospital. At 3 p. m. the next day after the accident, the man who had picked her up after her fall, an orderly at defendant's hospital, came to her room and made a statement. Counsel for plaintiff asked her what the orderly had said and objection to the question was sustained as follows:

"Q I will ask you, please, ma'am, what he said?

"MR. SIMPSON: And we object, Your Honor, on the ground—

"THE COURT: What an employee said?

"MR. WILDER: Yes, sir, an orderly of the hospital, Judge.

"MR. SIMPSON: Hearsay.

"THE COURT: Sustain the objection."

We find nothing to indicate what plaintiff expected the answer of the witness to be. The court's action in sustaining the objection is assigned as error in Assignment 3.

On cross-examination, plaintiff testified that she did not see any water until after the orderly picked her up.

Plaintiff's witness, Mrs. Robinson, testified that she was a nurse and had worked at defendant's hospital in April and May, 1965. On one occasion in April or May, 1965, she was leaving the hospital. She had come down in the elevator. It was raining. She went out the front door of the lobby. Direct examination of this witness continued and Assignment 2 is that the court erred" . . . . in sustaining objection to the testimony of the witness, Mrs. Emma Ruth Robinson, as shown by the following colloquy . . . . :

"Q All right, ma'am, what happened?

"A I slipped in the water that was in the floor.

"Q Did you report that to anyone there at the hospital at that time?

"MR. SIMPSON: We would object.

"A The telephone operator.

"Q Wait a minute. Don't answer yet, please, ma'am.

"MR. SIMPSON: We object to that.

"MR. WILDER: The question of notice.

"THE COURT: Report it to anyone?

"MR. WILDER: Any employee of this hospital, Judge.

"MR. SIMPSON: We would object to it in that form.

"THE COURT: Sustained.

"Q Was there someone sitting at the desk in the hospital there at that time?

"A The telephone operator.

"Q I will ask you, please, ma'am, if you reported to the telephone operator at the hospital what had happened there?

"MR. SIMPSON: We object to—

"A Yes, sir. She said—

"MR. SIMPSON: We object to that, what she told—

"THE COURT: Sustained.

"Q You say that was in—do you know which time it was specifically?

"A No, sir.

"THE COURT: To the best of your recollection when was it?

"THE WITNESS: Well, I know I worked there in April and May. I don't know which one of those months it was that I slipped and fell, because I didn't have any occasion to keep the date down at that time."

On cross-examination, Mrs. Robinson testified as follows:

"Q All right. The rug—no rug was there, you say, when you were—on this occasion you have talked about?

"A No—what?

"Q No rug was there on the occasion that you have talked about?

"A It was there, but it wasn't right in front of the door.

"MR. SIMPSON: I want to be sure, that by going into this, that I don't waive my grounds of objection. I want to make sure that I state that for the record, that by discussing this incident that I don't waive my grounds of objection heretofore.

"THE COURT: All right.

"Q You say that you slipped; is that where the rug had been pulled back?

"A. Yes, sir.

"Q And you didn't fall, did you?

"A No, sir."

Mr. Bradley testified that he was the meteorologist in charge of the weather bureau at Birmingham and keeps records of rainfall "For the airport . . . ." He testified that on June 6, 1965, some rain fell between noon and 4 p. m., but ". . . we did not have a measureable (sic) amount." During the three hours from 4 p. m. to 7 p. m., raiinfall was thirty-seven hundredths of an inch; being eleven hundredths for the first hour, three hundredths for the second hour, and twenty-three hundredths for the third hour. Between 7 p. m. and 11:00 p. m., rainfall was one and sixty hundredths inches, most of which fell during the first two hours, i. e., sixty-two hundredths of an inch from seven to eight, and seventy-seven hundredths from eight to nine.

The witness testified further that he had no way of knowing ". . . . whether it was raining on the southside or not"; that the observations were made at the airport; and that he had no way of knowing whether the rain fell in a cloudburst at the very end of the hour or if it rained steadily throughout the hour.

Plaintiff introduced the deposition of the hospital administrator to effect that Percy Faulks and Joseph Chunn were the two employees of the hospital who were responsible for maintenance of the hospital lobby on June 6, 1965. The payroll time sheet of the hospital shows that Faulks and Chunn worked from 6:30 a. m. to 3 p. m. on that day.

The parties appear to agree that plaintiff was an invitee at the time she fell and

that defendant owed to plaintiff the duty to exercise reasonable care to have the hospital lobby in a reasonably safe condition for plaintiff to walk out at that time. Norwood Clinic, Inc. v. Spann, 240 Ala. 427, 199 So. 840.

The burden is on plaintiff to show that defendant was guilty of negligence which proximately caused plaintiff's injury. No presumption of negligence arises from the mere fact of injury to an invitee. F. W. Woolworth Co. v. Ney, 239 Ala. 233, 194 So. 667, ¶¶ [3–5], [6].

In a case where plaintiff fell on a banana peeling in a store, this court quoted from the *Woolworth* case, supra, as follows:

" ' . . . . Actual or constructive notice of the presence of the offending instrumentality must be proven before the proprietor can be held responsible for the injury. . . . .' " S. H. Kress & Co. v. Thompson, 267 Ala. 566, 569, 103 So.2d 171, 173 ¶ [4].

In the instant case, the offending instrumentality was water. Plaintiff appears to contend that it was rain water. There is no evidence that defendant had actual notice that the water was on the lobby floor. There is no evidence how long the water had been there. There is no evidence as to how the water came to be there other than evidence that when plaintiff got off the elevator she saw through the glass door that it was raining outside the building. There was no evidence as to how long it had been raining outside. There is no evidence that anyone brought rain water into the building, or, if it can be inferred that they did, as to when they brought it in.

It does not appeear how much water was on the floor, or that it was muddy, or any other fact to support an inference that the water had been there so long that defendant, in the exercise of reasonable care, ought to have known of the water's presence and, therefore, ought to have removed it. There is no evidence that the floor was not properly designed or constructed.

"In Cox v. Goldstein, 255 Ala. 664, 53 So.2d 354, the plaintiff fell in the vestibule of a store. Water had come into the vestibule. ' "This hard and slick-surfaced floor of the vestibule led directly to the door from the public sidewalk, was wet and *very slippery,* and its entire area was 'awfully' wet with muddy water." ' 255 Ala. at 665, 53 So.2d at 355. This court held that the trial court did not err in giving the affirmative charge for defendants and said:

" 'It is not the duty of persons in control of such passageways to keep a force of moppers to mop up the rain as fast as it falls or blows in, or is carried in by wet feet or clothing or umbrellas, for several obvious reasons unnecessary to mention in detail.' (255 Ala. at 667, 668, 53 So.2d at 357)" Gulas v. Ratliff, 283 Ala. 299, 301, 216 So.2d 278, 279–280.

We are of opinion that the evidence fails to show that defendant had been guilty of any negligence, and, therefore, that the court did not err in giving defendant's requested affirmative charge with hypothesis.

*Assignment 2.*

As noted above, defendant asked Mrs. Robinson two questions to which objections were sustained. In Assignment 2, defendant has jointly assigned as error two rulings of the trial court. One question asks the witness did she report to "anyone" or "any employee" of the hospital her alleged slipping one or two months prior to plaintiff's injury. Defendant objected to the first question "in that form." The form of the question is leading and objection to it was sustained for that reason without error, if for no other reason.

The second question is also leading and subject to the same objection.

Assignment 2 does not show reversible error.

*Assignment 3.*

In the third assignment, the court sustained objection to a question wherein

plaintiff was asked what the hospital orderly had said on the day following the accident. The question clearly called for hearsay. Whether the expected answer would be admissible as an exception to the rule against hearsay is not shown by the record. The question does not show on its face that the expected answer would be relevant evidence.

"It is necessary in order to review a trial court's ruling sustaining objection to a question which does not on its face show what is the expected answer, that attention be called to the proposed answer and show that such answer would be relevant evidence, notwithstanding section 445, Title 7, Code of 1940. (Citations Omitted)" Strickling v. Whiteside, 242 Ala. 29, 31, 4 So.2d 416, 417–418.

See also: Burnett v. Garrison, 261 Ala. 622, 631, 75 So.2d 144, ¶¶ [18], [19]; Cherry v. Hill, 283 Ala. 74, 77, 214 So.2d 427, ¶ [6], and authorities there cited.

In this assignment, therefore, there is no error to reverse.

Affirmed.

LIVINGSTON, C. J., and SIMPSON, BLOODWORTH, and McCALL, JJ., concur.