Jerry Strahsburg and his wife, Eirselda Strahsburg, brought an action against Winn-Dixie Montgomery, Inc., alleging that it had negligently, recklessly, or wantonly allowed water to accumulate on the floor of its Anniston grocery store and that the presence of the water on the floor had proximately caused Jerry Strahsburg to slip and fall and injure his hand and arm.
The only issue is whether the trial court erred in granting Winn-Dixie's motion for a directed verdict on Mr. Strahsburg's claim for personal injuries and his wife's claim for damages for loss of consortium and time lost from work as a result of her husband's injury.
A directed verdict tests the sufficiency of the opponent's evidence. Danford v. Arnold, 582 So.2d 545 (Ala. 1991). When ruling on a motion for a directed verdict, the trial court must "view the evidence, and all reasonable inferences which a jury might have drawn therefrom, in a light most favorable to the non-moving party." Caterpillar Tractor Co. v. Ford,406 So.2d 854, 856 (Ala. 1981). The moving party *Page 917 
must show that there is no genuine issue of material fact and that it is entitled to a judgment as a matter of law.Danford, supra.
The applicable standard of review is the "substantial evidence" rule, § 12-21-12, Ala. Code 1975.
 "[S]ubstantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved."
West v. Founders Life Assurance Co. of Florida, 547 So.2d 870,871 (Ala. 1989).
The evidence, when viewed in a light most favorable to the Strahsburgs, shows the following: Jerry Strahsburg was shopping in the Winn-Dixie store when he fell and injured his hand and arm. It had been raining earlier that day and water had been tracked into the store on people's shoes and on the wheels of the shopping carts. Strahsburg had gone through the check-out line, and his groceries had been bagged. He returned the cart to the front of the store, took two steps away from the carts, slipped, and fell on the floor.
Strahsburg testified that he did not see a "wet floor" sign when he entered the store. He said that there was some sort of a sign in front of the shopping carts, but not one in front of the doors. There are two sets of doors, one set on either side of the store, and the shopping carts and the store manager's desk are between the two sets of doors. Strahsburg claims that he knows that he slipped on water because, he says, when he got up his pants were wet, but he testified that he did not see any water on the floor until after he fell. He was in the store approximately 10 minutes before he fell. He also testified that when he fell he was approximately 10-14 feet away from the entrance and exit doors.
Evidence from other witnesses showed the following: The store manager testified that it was store policy to make sure that any water on the floor was cleaned up as well as possible. The clean-up procedures included placing mats at each entrance, a plastic mat outside and a cloth mat inside. These mats were always in place, regardless of whether it was raining. The store also had four "Caution Wet Floor" signs that were put out when it was raining or when something had been spilled in the store. Also, the part-time grocery baggers were instructed to mop the areas when needed and as often as they could. Two baggers were working on the day Strahsburg fell.
The manager also testified that on the day Strahsburg fell there was water on the floor and the "wet floor" signs were out. He said, however, that the floor was not covered with water, but only had tracks of water from people's feet and from the wheels of shopping carts. One of the baggers on duty the day of the accident discovered a leak in the roof and informed the manager about it; however, the leak was not discovered until after Strahsburg had fallen. The leak was in a corner of the store near the door, and the water from the leak was not in an area where customers walked. The manager testified that the water from the leak was approximately 14 feet away from where Strahsburg fell.
The bagger who discovered the leak testified as follows: On the day Strahsburg fell the warning signs and the mats were in place; he had been mopping the area to clean up the water brought in on people's feet and on the wheels of the shopping carts; it had been raining all day; and it was raining just prior to Strahsburg's fall. After Strahsburg fell, according to the bagger, he helped Strahsburg pick up his groceries, and the warning sign was then in place, only a foot and a half away from the groceries that Strahsburg had dropped on the floor. Further, the bagger said, the water that had accumulated from the leak in the roof was not near the area where Strahsburg fell and, at the time Strahsburg fell, it was still raining.
A storekeeper is "under a duty to exercise reasonable care in providing and maintaining reasonably safe premises for the use of his customers." Cox v. Western Supermarkets, Inc.,557 So.2d 831 (Ala. 1989). The storekeeper is not an insurer of the safety of his customers, but rather is *Page 918 
liable only if he negligently fails to exercise reasonable care to maintain the premises of the store in a reasonably safe condition. Cox, 557 So.2d at 832. The burden is on Strahsburg to show that Winn-Dixie was negligent and that its negligence proximately caused his injury. Terrell v. Warehouse Groceries,364 So.2d 675 (Ala. 1978).
In Terrell v. Warehouse Groceries, the plaintiff, shortly after entering the defendant's grocery store, slipped and fell in rainwater located 25 to 30 feet inside the store. There was conflicting testimony as to how long it had been raining, and there was evidence that the plaintiff did not notice any water until after she had fallen. The evidence showed that there were no abnormal accumulations of water but only as much as one would expect to have been tracked in by customers and by shopping carts. The trial court held that there was no evidence of a breach of duty by the defendant and directed a verdict for Warehouse Groceries.
The Terrell Court stated:
 "[A]lthough a storekeeper owes a duty to exercise reasonable care to maintain the premises in a safe condition, where the foreign substance is rain water tracked in by customers and in the absence of unusual accumulations, due care does not require that a storekeeper keep the floor completely free of water. When it rains, surfaces naturally become more slippery than usual — a fact with which a customer is sufficiently familiar. To require a storekeeper to keep a floor completely dry during a rainstorm or to hold him responsible for every slick place due to tracked-in rain water would impose an unreasonable standard of care and would, in effect, make him an insurer of the customer's safety. Of course, each case must be examined in light of its particular circumstances, and where there are unusual accumulations of rain water or other circumstances, due care may require that the storekeeper take affirmative measures such as mopping, applying anti-slip compounds, or posting warnings."
Terrell, supra, at 677.
In Gulas v. Ratliff, 283 Ala. 299, 216 So.2d 278 (1968), the plaintiff walked into defendant's restaurant and slipped and fell on snow and ice just inside the doorway. The Gulas Court, in holding that the trial court erred in refusing the affirmative charge for the defendant, stated that the defendant did not owe the plaintiff a duty to keep a force of moppers to clear the floor of snow brought in by customers and that no breach of duty occurred as a result of the defendant's failing to remove the snow. Gulas, 283 Ala. at 803, 216 So.2d at 281;see also Cox v. Goldstein, 255 Ala. 664, 53 So.2d 354 (Ala. 1951) (plaintiff slipped on rain in lobby of dress store; Court held that "[i]t is not the duty of persons in control of such passageways to keep a force of moppers to mop up the rain as fast as it falls or blows in, or is carried in by wet feet or clothing or umbrellas, for several obvious reasons unnecessary to mention in detail").
This Court recently decided in King v. Winn-Dixie ofMontgomery, Inc., 565 So.2d 12 (Ala. 1990), a plurality opinion, a slip and fall case involving a plaintiff who fell on rainwater just inside the defendant's grocery store. The store manager testified that it was store policy to mop the floors every 30 minutes if the weather was clear and "as needed" during inclement weather. The plurality, relying on Cox v.Western Supermarkets, Inc., 557 So.2d 831 (Ala. 1989), reversed the summary judgment entered in favor of the grocery store on the plaintiff's negligence claim and said, "[W]e cannot say, as a matter of law, that the defendant was not 'delinquent' in failing to discover the water and mop it up before the plaintiff fell. The resolution of the negligence claim involv[ed] factual questions, and that claim should therefore [have been] resolved by a jury." King, supra, at 13.
Justice Houston, concurring in the result regarding the negligence claim in King, stated that the plurality failed to correctly state a storekeeper's duty in regard to rainwater as stated by this Court in Terrell, supra. Justice Houston also asserted that Cox v. Western Supermarkets, Inc., supra, was being wrongly construed and extended *Page 919 
beyond its facts in the plurality opinion in King.
Cox involved a plaintiff who slipped and fell in an aisle in the produce department. When the plaintiff got up after the fall, there was a wet spot on her pants, but it was undisputed that there was never anything found on the floor that would indicate why she fell. The Cox Court said that it could not, as a matter of law, hold that there was not a foreign substance on the floor or, if there was, that the defendant was not delinquent in failing to discover it and remove it. Cox, at 832.
In King and in the present case, it was undisputed that the substance on the floor was rainwater and, therefore, the focus in King should have turned, and in the present case does turn, to whether there was an unusual accumulation of rainwater or there were other circumstances that would require, in the exercise of due care, affirmative measures by the storekeeper, such as mopping, applying anti-slip compounds, or posting warnings. See Terrell, supra. Justice Houston, citing to the storekeeper's duty of care as set out in Terrell, stated in his special concurrence in King: "Because there was some evidence of an unusual accumulation of rainwater (Ms. King in her affidavit stated, 'I slipped and fell in a puddle of water on the floor . . . at the front entrance of the store'), there was a factual question as to whether Winn-Dixie should have taken more affirmative measures than it had taken before Ms. King fell." 565 So.2d at 14.
In the present case, Strahsburg testified, "[T]here was a lot of water on the floor because my pants were, if you want to say, close to sopping wet. I had blue jeans on and they were very wet." Although there was testimony from the store manager and the bagger that the floors were mopped as often as possible and that the warning signs were in place when Strahsburg fell, he testified that he did not see any warning signs in the area where he fell. The testimony from Strahsburg regarding the amount of water on the floor and his testimony that he did not see any warning signs posted created factual questions as to whether Winn-Dixie breached its duty of care to Strahsburg.
We find that the evidence, when viewed in a light most favorable to Stahsburg, did not establish as a matter of law that Winn-Dixie was free from negligence. Therefore, the trial court erred in directing a verdict for Winn-Dixie.
REVERSED AND REMANDED.
HORNSBY, C.J., and ADAMS, HOUSTON and INGRAM, JJ., concur.