Jerry **ELROD,** Plaintiff-Appellant,

v.

**DOLGENCORP, LLC,** Defendant-Appellee.

No. 17-10715
Non-Argument Calendar

United States Court of Appeals,
Eleventh Circuit.

(October 19, 2017)

William Tipton Johnson, III, Jeffrey Conett Kirby, Chandler Osborn Kirby, Kirby Johnson, PC, Birmingham, AL, Walton Hickman, Hartley & Hickman, PC, Orange Beach, AL, for Plaintiff-Appellant

Deborah Alley Smith, Rick D. Norris, Jr., Richard E. Smith, Christian & Small, LLP, Birmingham, AL, for Defendant-Appellee

Before WILLIAM PRYOR, MARTIN and ANDERSON, Circuit Judges.

PER CURIAM:

Jerry Elrod appeals the judgment entered as a matter of law in favor of Dolgencorp, LLC, and against Elrod's complaint of negligence. Elrod sued Dolgencorp, a subsidiary of Dollar General Corporation, for personal injuries he allegedly incurred when he slipped and fell entering a Dollar General store on a rainy day. The district court ruled that Dolgencorp owned Elrod no duty during a rainstorm to keep the floor of its store completely dry. We affirm.

## I. BACKGROUND

On August 17, 2013, Elrod waited for the rain to slacken before driving to a Dollar General store in Orange Beach, Alabama. Elrod, who had undergone surgery to repair his right meniscus several weeks earlier, parked in a space designated for handicapped persons, and walked 10 to 15 feet across the damp pavement to the store. Elrod passed under an awning that spread across the store entrance, traversed a rubber floor mat lying in front of the sliding doors, and crossed over the threshold onto a fiber mat. As a business owner, Elrod knew that rainwater could make the floor slick, and he used floor mats similar to those at the Dollar General to prevent falls in his store. Elrod did not drag his shoes on the fiber mat, but he looked down and did not see any water on the floor or observe anything odd about the mat. Elrod stepped on the polished concrete floor and immediately slipped and fell.

A cashier who was stationed near the entrance, Keily Cruz, had not observed water on the floor either. She inquired if Elrod was okay, and he responded, "Yes, I'm fine." While sitting on the floor, Elrod felt water on his calf and noticed two wet spots on the floor under him that were twelve to sixteen inches long. He assumed that "there had to be water on that mat that had come out from under [his] shoes." But a surveillance video did not show any dark spots on the fiber mat, water splashing from the mat under Elrod's shoe, or water pooled on the floor.

The video showed that Elrod rose from the floor without assistance and, when he walked away, that he had left a dark skid mark on the floor that apparently had been created by one of his rubber-soled sandals. Elrod's knee was hurting, yet he perused the store for several minutes before he approached employee Kathleen Knipe to ask about a particular item and to tell her about his accident. Although Elrod stated that he was okay and Knipe did not observe any water on the floor or on the fiber mat, Knipe placed a safety sign near the entrance doors. Elrod made a purchase at Ms. Cruz's register, walked to his car, and drove back to his vacation house, which was located approximately half a mile away. Dollar General did not prepare

an incident report until it received a letter from Elrod's attorney about one month after the accident.

Dollar General had prepared for rainy conditions. Its standard procedures required all employees to inspect the store entrance at least three times a day for potential hazards. On rainy days, employees were required to inspect the floor mats and the floor around the mats for water accumulation, to display safety signs, and to mop the floor as needed. The store manager, Angela Spiller, sometimes assigned a specific employee to inspect the floors, and she would touch the floor mat to ensure that it was dry. Ms. Spiller thought she had inspected the floor on the day of Elrod's accident and did not recall observing any water on or around the fiber mat.

Elrod waited until Wednesday, August 21, 2013, to undergo an examination in Birmingham with his orthopedic surgeon, Dr. Amanda Martin. She diagnosed Elrod with bone marrow edema and tears in his ACL and meniscus, and she repaired Elrod's meniscus arthroscopically. In 2015, Elrod underwent a total knee replacement. The surgeon, Dr. Darin Tessier, reviewed the magnetic resonance image that Dr. Martin had taken of Elrod's left knee and blamed the bruising and tears in Elrod's knee on a preexisting condition.

In June 2017, Elrod filed a complaint against Dolgencorp that alleged it had been negligent and wanton for failing to use reasonable care to keep its entry dry and to prevent his accident. Elrod alleged that Dolgencorp breached its duties to "undertake a reasonable inspection of the entrance"; to "warn customers ... about dangerous or unsafe conditions"; to "maintain" and "manage" the entryway; and "to provide and maintain a reasonable level of safety in the areas where [he] would be present as a customer." Elrod also alleged that Dolgencorp "allowed an unsafe and hazardous condition to exist."

The district court entered summary judgment against Elrod's claim of wantonness, and Elrod proceeded to trial on his claim of negligence. At the conclusion of Elrod's case, Dolgencorp moved for judgment as a matter of law, which the district court granted. The district court ruled that Elrod "failed to present a legally sufficient evidentiary basis for a reasonable jury to find for [him] on the issue of whether [Dolgencorp] owed a duty of due care since the hazard was open and obvious and clearly one that could have been detected by [Elrod] in the exercise of reasonable care." The district court also mentioned that, "[a]lthough [it] was not a basis for granting the motion for a judgment as a matter of law, ... [Elrod's case suffered from an] evidentiary problem." The district court stated that "[t]he expert testimony regarding causation [did] not appear to be reliable ... [or] supported by sufficient evidence" because Elrod's treating physicians "were not provided with a complete medical history" to inform their opinions on causation.

## II. STANDARD OF REVIEW

We review *de novo* the entry of judgment as a matter of law. *Collins v. Marriott Int'l, Inc.*, 749 F.3d 951, 956–57 (11th Cir. 2014). "A district court should grant judgment as a matter of law when the plaintiff presents no legally sufficient evidentiary basis for a reasonable jury to find for him on a material element of his cause of action." *Id.* at 957 (quoting *Pickett v. Tyson Fresh Meats, Inc.*, 420 F.3d 1272, 1278 (11th Cir. 2005)). We view the evidence and draw all reasonable inferences from that evidence in the light most favorable to the nonmoving party. *Id.*

## III. DISCUSSION

Elrod argues that Dollar General breached its duty to prevent his fall. Elrod

argues that he introduced evidence sufficient to create a genuine dispute about whether his accident was attributable to an unusual accumulation of water. Although Elrod also contends that his expert testimony was sufficient to establish causation, we decline to address an issue that the district court expressly stated "was not the basis for granting the motion for a judgment as a matter of law."

Under Alabama law, which the parties agree applies, an action for premises liability based on flooring made slippery by rainwater is "distinguishable from [an accident] resulting from some other object as is usual in a slip and fall case." *Gulas v. Ratliff*, 283 Ala. 299, 216 So.2d 278, 281 (1968). "[T]he duty of exercising ordinary and reasonable care to keep the premises in a reasonably safe condition[ ]" does not obligate "a storekeeper to keep a floor completely dry during rainstorms." *McDonald's Corp. v. Grissom*, 402 So.2d 953, 955 (Ala. 1981) (citing *Terrell v. Warehouse Groceries*, 364 So.2d 675 (Ala. 1978)). "When it rains, surfaces naturally become more slippery than usual a fact with which a customer is sufficiently familiar." *Terrell*, 364 So.2d at 677. Rainwater is an obvious hazard because it creates a "condition and ... risk.[that is] apparent to, and of the type that would be recognized by, a reasonable person...." *Hartzog v. Compass Bank*, 686 So.2d 325, 327 (Ala. Civ. App. 1996). Shopkeepers are not liable for slippery conditions caused by rainwater unless "there are unusual accumulations of rain water or other circumstances ... requiring that the storekeeper take affirmative measures such as mopping, applying anti-slip compounds, or posting warnings." *Terrell*, 364 So.2d at 677.

Dolgencorp was not liable for the injury Elrod incurred due to the slick floor. Elrod visited Dollar General as a storm subsided, when it was likely that rainwater might enter the store. Dollar General owed no duty to rid its entryway of all rainwater because a reasonable person would recognize that the water would make the polished concrete floors slippery. *See id.*; *Gulas*, 216 So.2d at 280 ("Everybody knows that the hallways between the. outside doors of such buildings and the elevators or business counters inside the building during a continued rain storm are tracked all over by the wet feet of people coming from the wet sidewalks, and are thereby rendered more slippery than they otherwise would be."); *Cox v. Goldstein*, 255 Ala. 664, 53 So.2d 354, 357 (1951) ("It is not the duty of [shopkeepers] ... to keep a force of moppers to mop up the rain as fast as it falls or blows in, or is carried in by wet feet or clothing or umbrellas....").

Elrod argues that a genuine factual dispute exists about whether there was "an unusual accumulation of rainwater," but we disagree. Alabama courts have held that an "unusual accumulation" exists when there is water in an unexpected location, *see Boyd v. Wal-Mart Stores, Inc.*, 710 So.2d 1258, 1260 (Ala. Civ. App. 1997) (focusing on water "around the service desk"), or in an excessive amount, *see Neel-Gilley v. McCallister*, 753 So.2d 531, 532–34 (Ala. Civ. App. 1999) (reversing summary judgment when genuine factual dispute existed about whether there was a "puddle" of water in the entrance to a restaurant that caused the plaintiff's "pants [to get] wet below her waist"); *Strahsburg v. Winn-Dixie Montgomery, Inc.*, 601 So.2d 916, 919 (Ala. 1992) (stating that plaintiff testified that his "blue jeans" were "close to sopping wet" after he fell). But no unusual accumulation exists when the floor is only wet enough to be slick. *See Terrell*, 364 So.2d at 677–78 (affirming directed verdict when store had mats no water observed in the entrance before

plaintiff's fall and what was there "appeared to be tracked in by customers," did not involve "any large puddles," and "was not muddy or dirty"); *Gulas*, 216 So.2d at 278–79, 303 (reversing judgment in plaintiff's favor because trial court failed to charge the jury the restaurant had no duty to mop the floors when plaintiff had snow and ice on her shoes and fell a couple of steps inside the entrance); *Cox*, 53 So.2d at 357 (affirming a directed verdict in favor of a store when plaintiff was injured after falling on slippery tile on a rainy day). Elrod presented no evidence of an unusual accumulation of water in the entrance to Dollar General. *See Terrell*, 364 So.2d at 677. Elrod did not observe anything odd about the fiber mat or any water on the floor until after he fell. After the fall, Elrod saw two spots of water on the floor underneath him, yet the water did not dampen his clothing. That Elrod felt water on the back of his leg and observed two long spots of water was consistent with what he and other customers might be expected to track into the store on a rainy day.

The district court did not err by entering judgment as a matter of law in favor of Dolgencorp. "[T]hat water was in the doorway[ is] where one would expect the floor to be wet on a rainy day[.]" *Boyd*, 710 So.2d at 1260. "There was no evidence in this case that [Dolgencorp] did anything or omitted to do anything which storekeepers, of ordinary care and prudence, under similar circumstances do or omit to do for the protection of their patrons." *Cox*, 53 So.2d at 357.

## IV. CONCLUSION

We **AFFIRM** the judgment in favor of Dolgencorp.