A jury found defendant-appellant guilty under an indictment that charged in pertinent part:
 "Danny L. Cooper, alias . . . did buy, receive, conceal or aid in concealing one (1) stereo with speakers and two (2) gold ladies necklaces . . . of the total and combined value of, to-wit: in excess of $25.00, the personal property of James Mattingly, knowing that the same had been stolen or having reasonable grounds for believing that the same had been stolen, and not having the intent to restore it to the owner."
The court fixed his punishment at imprisonment for ten years.
The fact that the property was stolen and that it had a value of approximately "two hundred and seventy dollars" was established by the testimony of the owner, who said that he discovered on December 22, 1979, that the named items had been taken from his home in Crestview, Florida.
A major insistence of appellant is that his conviction was based on the testimony of an accomplice that was not "corroborated by other evidence tending to connect the defendant with the commission of the" alleged felony, which is forbidden by Code of Alabama 1975, § 12-21-222. The point was raised in the trial court by a motion to exclude the evidence (which was overruled by the court) at the conclusion of evidence for the State. Appellant urges that the court was in error in overruling the motion to exclude the evidence and in refusing to give some charges requested in writing to the effect that the witness was an accomplice and that there could be no conviction unless her testimony was corroborated by other evidence tending to connect him with the offense.
The heart of appellant's contention in this respect is to be found in the following portion of his brief:
 "It is Appellant's contention that the State's witness, Linda Gail Nelson, was an accomplice as a matter of law.
 "This Court has held on numerous occasions that the classic and usual test to determine whether a witness is an accomplice is whether he could be indicted and convicted for the particular offense, either as a principal or accessory. Miller v. State, 290 Ala. 248, 275 So.2d 675 (1973), Ash v. State, 81 Ala. 76, 1 So. 558 (1887); Jacks v. State, Ala.Cr.App., 364 So.2d 397 (1978); Leonard v. State, 43 Ala. App. 454, 192 So.2d 461."
There seems to be a growing misconception as to the "test of whether a witness is an accomplice," which can be readily dispelled by the precise delineation of the test by Justice Faulkner, as found in the case cited by appellant of Miller v.State, 290 Ala. at 252, 275 So.2d at 679, as follows:
 "Since these are the witnesses relied on by the State for corroboration, the question is whether they were also accomplices. We hold that they were not. The test of whether a witness is an accomplice *Page 497 
is, could the witness have been indicted and convicted of the offense charged either as principal or accessory. If he could not, he is not an accomplice. Dykes v. State, 30 Ala. App. 129, 1 So.2d 754 (1941); Snowden v. State, 27 Ala. App. 14, 165 So. 410 (1936); Ash v. State, 81 Ala. 76, 1 So. 558
(1886). Nothing in the record shows that they could have been indicted for the offense."
The test does not go to the extent that appellant and others claim. It is limited to a test of exclusion, by the language, as stated in Miller, "If he could not, he is not an accomplice." Cases in which the test has been applied show that it was applied to exclude as accomplices witnesses who could not have been indicted and convicted of the offense charged. We do not doubt that if the particular witness in this case were on trial as a defendant, and the evidence in the case were the same as it is in this case, she could have been convicted of the offense, but we cannot say that she should have been convicted or that the evidence established her guilt. That question would have been one for the trier of the facts to decide.
Appellant supplements his contention in his brief as follows: "Where there is no conflict in the testimony, the question of whether a witness is an accomplice is a question of law for determination by the Court, Pryor v. State, 47 Ala. App. 706,260 So.2d 614 (1972)." Appellant's statement is in substantial accord with the statement in the cited case and in many other cases in which it was referable to the question whether a witness was an accomplice, as well as in multitudinous cases in this jurisdiction and elsewhere as to the dividing line between the functions of the judge and the functions of the jury. Unfortunately, it has been often considered as unalterably, unqualifiedly and uninterruptedly correct. However, it is qualified by the principle that whether there exists a question of law for the judge to decide as distinguished from a question of fact for the jury to decide often turns on whether there is a material conflict in the evidence as to a particular issue of fact, and it appears that such largely accounts for the statement relied upon by appellant. Sometimes, however, the evidence is undisputed but persons of reasonable minds would draw contrary conclusions or inferences from such undisputed evidence as to the issue of fact under consideration. Whether in a criminal case or in a civil case, if the undisputed evidence is such that persons of reasonable minds would and could conscientiously differ in their conclusions therefrom as to whether or not a particular fact existed, its existence vel non is one for the jury to determine. This is true whether the issue of fact is whether there was negligence of a party, whether there was a proximately causal connection between any negligence and an injury, whether a particular person was the aggressor in a fight, whether an accused stole merchandise from a store and as to any innumerable issues of fact. If the law were otherwise, a jury would be a useless appendage in many cases in which there is only one witness as to a pivotal fact in the case.
When conflicting reasonable inferences can be drawn from undisputed evidence, the correct rule to be applied has been variously stated, but we believe that the following is correct:
 "Also, our courts have pronounced the rule to be: `* * * when the facts, although undisputed are such that reasonable men may reasonably and conscientiously arrive at opposite conclusions from them, such facts present, not a question of law for the court, but a question of fact for the determination of the jury.' Stearnes v. State, 4 Ala. App. 154, 58 So. 124." Pate v. State, 32 Ala. App. 365, 26 So.2d 214, 215 (1946).
Appellant leans heavily upon Jacks v. State, Ala.Cr.App.,364 So.2d 397 (1978) but overlooks the following from page 403:
 "Thus where there is doubt or dispute whether a witness is in fact an accomplice, the question is for the jury and not the trial court. Skumro v. State, 234 Ala. 4, 170 So. 776 (1936). Where there is doubt whether a witness is in fact an accomplice, and the testimony is susceptible to different inferences on that point, *Page 498 that question is for the jury. Sweeney v. State, 25 Ala. App. 220, 143 So. 586 (1932); Horn v. State, 15 Ala. App. 213, 2 So. 768 (1916). (Emphasis supplied)."
The witness, an eighteen-year-old girl, who appellant says was an accomplice of appellant, a twenty-six-year-old man, testified that prior to, or on, the day before Christmas, the defendant and one Cecil Gillman came to her brother's house in Lockhart, where she lived with her mother and stepfather, and brought the stereo to the back door. She said:
 "Well, Cecil and Danny come and Danny come to the back door and he was talking about Cecil had a stereo that he wanted to sell and I had been wanting one a long time. So I came over to look at it. And we walked out to the car. And I asked Danny how much did he want for it and Danny said, Well, I probably could get it for fifty dollars, but Cecil wanted sixty-five and — uh — Danny had said earlier that he would just give it to me if it was his. And so he got it and brought it in the house.
 "Q. Is that when you agreed to buy it? When they got it out of the car and brought it in the house?
"A. Yes.
 "Q. Okay. All right. Now, Danny — let me get this straight. Danny told you that it was Cecil's stereo, is that correct?
"A. Yes.
 "Q. Okay. You agreed to buy it for sixty-five dollars, is that correct?
"A. Yes.
"Q. Okay. Did you give them any money at the time?
"A. No.
"Q. Have you given them any money for it?
 "A. Not then. I gave them twenty-five dollars later or my stepfather did.
 "Q. How soon after they were there when they brought in the stereo, was the twenty-five dollars given to them? Was it that same day?
"A. It was about a week or a week and a half.
 "Q. Okay. Did this stereo appear to be worth a great deal more money than sixty-five dollars in your opinion?
"A. Yes.
 "Q. Well, did you inquire, would you tell the jury here whether or not you inquired if it was stolen?
 "A. Well, I mentioned — I asked Danny was it stolen and he said, no.
"Q. And did you say anything else?
 "A. Yes, I said — he says, well, what if it is? Well.
 "Q. You said, well . . . just go ahead. Tell me again what Danny said?
 "A. I asked him was it stolen and he said, no. Then he said, well, it don't really matter, does it?
"MR. McGILL: I didn't understand that. What . . .
"THE COURT: It doesn't really matter, does it.
"Q. And you said?
"A. No.
"Q. You said it really didn't matter?
 "A. Well, I didn't think it was. I mean I didn't figure it would be.
 "Q. Even though it appeared to be worth a great deal more than sixty-five dollars?
 "A. Well, Cecil said he was getting a divorce and he needed the money."
She further testified that she received the two gold necklaces from Danny at Christmas.
Appellant contends that the above testimony shows as a matter of law that the witness was an accomplice. In order for her to have been guilty as an accomplice she must have known that the property had been stolen or had reasonable grounds for believing that it had been stolen. In her testimony, she seems to protest any such state of mind on her part.
By her statement, she said in effect she believed that the bargain price on the stereo was because Gillman was getting a divorce and that he needed the money. For the trial court to have held as a matter of law that she was an accomplice would have been invasive of the province of the jury. *Page 499 
The only other insistence for a reversal is directed to a comment of the trial court that occurred during the direct examination by the State of the witness who appellant says was an accomplice, pertaining to her receiving the necklaces. We quote from the transcript the comment of the trial judge and the context thereof:
 "Q. The day before Christmas? And where did you see them?
"A. In my mother's bedroom.
 "Q. All right. And had you talked with Danny Cooper about these?
"A. No.
"Q. You never have talked with him about it?
"A. I don't remember.
"Q. Pardon?
"A. I don't think so.
 "Q. You don't think so? I want you to think real carefully now.
 "A. I might have mentioned something to him after I got them.
"Q. And what did he say?
"A. I don't remember.
"Q. Did he say anything about them?
"A. I don't remember.
 "Q. Did he say they were yours and that he give them to you?
 "MR. LOGGINS: We object to the leading form of the question, Your Honor. He's putting words in her mouth. She said she didn't remember three times.
 "THE COURT: Overruled. The witness is obviously reluctant.
"MR. LOGGINS: We except.
 "A. Uh — I mentioned something to him about them, but I don't remember everything that was said.
"Q. I want to know what he stated?
"A. I don't remember."
Appellant does not question the correctness of the court's action in overruling defendant's objection to the question to the witness on the ground that it was leading. He says that the court's statement that "The witness is obviously reluctant" was a comment "upon the credibility and demeanor of the witness which is a question solely for determination by the jury." We do not construe defendant's exception as any protest against the statement of the court but as an exception to the court's ruling. If counsel had thought that it was an improper comment, he should have made known that view to the court, so that it would have had an opportunity to take corrective action, which it could well have done, by an explanation to the jury. We think the comment was obviously an explanation to defendant's counsel of the court's reason for overruling his objection. Whether the comment was appropriate or not, we find nothing therein that constitutes error prejudicial to defendant.
A review of the record discloses no error prejudicial to defendant. The judgment of the trial court should be affirmed.
The foregoing opinion was prepared by Retired Circuit Judge Leigh M. Clark, serving as a judge of this Court under the provisions of § 6.10 of the Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court. The judgment of the trial court is hereby
AFFIRMED.
All the Judges concur.