The sole issue presented on appeal from a summary judgment in this medical malpractice *Page 722 
case is whether the trial court erred in ruling that Plaintiff's expert evidence failed to create a genuine issue of material fact as to Defendants' alleged breach of the applicable standard of professional care. Plaintiff alleges that individual Defendant Dr. Preston Daugherty, as agent of the corporate Defendant, was negligent in performing surgery on Plaintiff and wrongfully failed to inform the Plaintiff of the risks involved in the surgery.
The motion for summary judgment, the grounds therefor, and the movant's supporting evidence addressed only the Plaintiff's claim for negligent surgical procedure. The trial court's order, granting summary judgment as to this claim only, was made final, and thus appealable, pursuant to A.R.Civ.P. 54 (b). Plaintiff's claim for failure of informed consent is not presented for our review. Treating the Rule 54 (b) certification as a partial summary judgment, we affirm.
Plaintiff/Appellant Larry Lee Malone, a 27-year-old married male, underwent a surgical procedure known as a laminectomy on May 18, 1979. Dr. Daugherty performed the operation, assisted by Dr. Eugene T. Saiter. During the course of the operation, the patient's blood pressure dropped, necessitating an emergency procedure to repair the left common iliac artery and vein, which had been lacerated during the laminectomy.
Malone urges us to reverse and remand this case for trial on the merits, claiming that there existed a scintilla of evidence that Dr. Daugherty breached the requisite standard of care during the surgery. In support of this contention, Malone relies on the testimony of his expert, Dr. Henry LaRocca, who testified on direct examination as follows:
 "Q . . . Were you familiar with that standard of care in May of 1979, which is the date that the surgery performed by Dr. Daugherty was done on Larry Lee Malone?
"A Yes.
 "Q And, also, would orthopedic surgeons practicing in Mobile, Alabama, be expected to conform to that standard of care?
"A Yes.
 "Q And would it be within the standard of care which you have previously testified to for a surgeon to lacerate the left common iliac artery and the left common iliac vein during the performance of a laminectomy?
 "A Not as commonly done, no. It is a recognized complication of such surgery.
 "Q Now I will ask you whether or not, based upon your review of the hospital and surgical records and the summaries prepared by Drs. Daugherty and Bowen, and based upon your education and your training and your experience in the field of orthopedic surgery, and particularly based upon your experience in performing lower lumbar laminectomies, do you have an opinion which you could state with a reasonable degree of medical certainty as to the cause of the laceration of the left common iliac artery and the left common iliac vein of Larry Lee Malone?
 "A I can only surmise that the vessels were lacerated with an instrument known as a pituitary ronguer as it was inserted to remove disc tissue.
 "Q And I will ask you whether or not, based upon your reading and review of those documents I just referred to, and based upon your education and your training and experience in the field of orthopedic surgery, do you have an opinion which you can state with a reasonable degree of medical certainty as to whether the laceration of the left common iliac artery and the left common iliac vein of Larry Lee Malone by Dr. Daugherty [done] in the performance of this laminectomy was a departure from the recognized standard of care in the medical community in the field of orthopedic surgery?
 "A Well, certainly it was a departure in that it was not an intended occurrence." *Page 723 
Later, also on direct examination, Dr. LaRocca testified:
 "Q Even though this [laceration of the blood vessels] is a recognized complication of laminectomy surgery, for such an event to occur, would it still be a departure from the standard of care?
 "A If the standard of care is to remove the disc without injury [to] either the nerve or blood vessel, then it is a departure, and that would depend on the definition of the standard of care."
Despite some degree of equivocation on Dr. LaRocca's part, we agree that this testimony, on its face, when viewed abstractly, independently, and separately from the balance of his sworn statement, would appear sufficient to defeat the motion for summary judgment. But our review of the evidence cannot be so limited. The test is whether Dr. LaRocca's testimony, when viewed as a whole, was sufficient to create a reasonable inference of the fact Plaintiff sought to prove. That is to say, could a jury, as the finder of fact, reasonably infer from this medical expert's testimony, or any part thereof when viewed against the whole, that the defendant doctor had acted contrary to the recognized standards of professional care in the instant case.
Thus, in applying this test, we must examine the expert witness's testimony as a whole. On cross-examination, Dr. LaRocca testified as follows:
 "Q And when you are saying that it could be a departure from the standard of care, I believe you said it depends upon what is the standard of care.
 "A It depends entirely on the meaning of the term `standard of care.' I think that the objective of the operation is the removal of the diseased disc tissue without at the same time producing damage to undiseased structures.
"Q Yes, sir.
 "A Now [if] the objective of the operation is the same thing as the standard of care, then there would be departure in lacerating the vessels; but it's an issue that I think must be resolved on the definition of standard of care. It's something that all of us who do this operation have in mind every time it's done as a possibility and something that is to be feared, something that is to be thought about in the event that something precipitous like a blood pressure drop occurs so that proper action can be taken.
 "Q In your review of the hospital records and medical records from the surgery which was performed on Mr. Malone, do you see anything in those records which would indicate to you that Dr. Daugherty was negligent in the performance of this surgery?
". . .
 "A No, I don't think so. I think that this is something that can happen during the conduct of the procedure under the best of circumstances. I think it could happen to me tomorrow.
 "Q So, then, as I understand, is it your testimony that while a departure from the standards, depending upon how you define the standard, may be that a result occurs but it doesn't necessarily mean that there was negligence on the part of the physician?
". . .
 "A Well, here again negligence would have to be understood. If there were an accidental forward thrust of the arm beyond the force intended by the surgeon, then this could happen. If the operation were performed with anything less than absolute meticulous attention to the details of the procedure, then something like that could happen; and under such circumstances I would think that negligence would prevail; but I think that if in the normal conduct of the operation, without there being any untoward event, that this kind of thing stands as an accident and as an accident which has occurred a number of times, at least sufficiently frequently to end up in the literature to warn us all that it does occur."
While it is true that conflicting inferences from the same testimony, when viewed most favorably to the nonmoving party, may establish the requisite scintilla of evidence, *Page 724 
we agree with the trial judge that, when Dr. LaRocca's testimony is viewed as a whole, as opposed to its isolated parts, no conflicting factual inferences exist. It is evident that Dr. LaRocca was confused by the use of the term "standard of care," as that term is used in a legal sense. On direct examination, Dr. LaRocca seems to be saying that the laceration of the blood vessels during the laminectomy fell below the recognized standard of care. Instead, as we discover upon further reading, Dr. LaRocca is equating the term "standard of care" with the ultimate, most satisfactory result of the operation, i.e., "the removal of the diseased disc tissue without at the same time producing damage to undiseased structures."
Here, it is clear, by the conclusion of his testimony, that this misunderstanding had been rectified, and that Dr. LaRocca's testimony establishes that Dr. Daugherty, in his opinion, did not breach the standard of care for this particular operation, and that such an occurrence as the laceration of the blood vessels was a surgical accident, and did not equate with negligence.
In Moses v. Gaba, 435 So.2d 58 (Ala. 1983), this Court observed:
 "Physicians cannot be held to a standard of perfection. From time to time, even the most skilled physician, in the exercise of the utmost care, makes mistakes. These instances of human imperfection, including Dr. Gaba's, do not rise to the level of medical malpractice. Malpractice occurs only when the physician's actions or omissions are not within the required standard of care." 435 So.2d at 60-61.
In keeping with the Moses principle, it is our view of the evidence that Dr. LaRocca termed what happened during the course of Mr. Malone's operation "an accident." After a thorough review of the record, we conclude that there was not a scintilla of evidence from which a jury could reasonably conclude that Dr. Daugherty's actions in performing the surgery fell below the required standard of care. Therefore, the judgment of the trial court with respect to the negligence claim is due to be, and it hereby is, affirmed.
AFFIRMED.
TORBERT, C.J., and MADDOX, SHORES and BEATTY, JJ., concur.