SHORES, Justice.
Rosalind and Joseph Brown appeal from a summary judgment granted in favor of Dr. Horace E. Sanders in a medical malpractice case. We affirm.
The sole issue is whether the trial court erred in ruling that the plaintiffs failed to produce evidence creating a genuine issue of material fact as to Dr. Sander’s alleged breach of the applicable standard of professional care.
*275 Plaintiff Rosalind Brown, a 23-year-old married woman, underwent a surgical procedure known as a right oophorectomy on September 23, 1981. The purpose of the surgery was to remove Ms. Brown’s right ovary. Dr. Horace E. Sanders performed the operation. The Browns contend that during the course of the surgery, Dr. Sanders negligently failed to perform a complete right oophorectomy, and that as a result of his negligence Ms. Brown was caused to undergo a second and then a third operation, those two operations being more serious and severe than the first, to correct the condition which should have been corrected by the operation on September 23, 1981. The Browns filed suit against Dr. Sanders on September 22, 1983.
Dr. Sanders filed a motion for summary judgment on April 25, 1986. In support thereof, he submitted his affidavit, in which he stated the following:
“When I performed surgery on Rosa.lind Brown on September 23, 1981, I found that her right ovary had been replaced by a large chocolate cyst, filled with dark blood. Her anatomy was distorted by the cyst, with the ovary wedged up and pushed closely against the tube. To try to get well away from the ovary would have involved taking out a portion of the tube. I slid a clamp under the ovary, removed the cyst, and it was my opinion that I had removed the entire ovary.
“... I am not guilty of negligence or professional neglect in my treatment of Rosalind Brown; and it is my opinion that the medical care and treatment administered by me to Rosalind Brown was in accordance and conformity with the generally accepted standards, customs and practice of medical doctors....”
On May 12, 1986, the Browns filed a motion in opposition to the motion for summary judgment, based upon testimony in the depositions of Dr. Sanders and Dr. Edward Murphy Haile. Dr. Haile was consulted by Ms. Brown after Ms. Brown continued to suffer from pain and other problems following the surgery done by Dr. Sanders. Dr. Haile performed a hysterectomy on Brown, and he testified that, while he was performing that surgery, he discovered what he believed to be, and what the pathology report later confirmed to be, ovarian tissue at the site where the right ovary had been.
We note that Dr. Haile repeatedly testified that he could not give an opinion as to whether Dr. Sanders had been negligent. The Browns offer the testimony of Dr. Haile for the purpose of establishing the standard of care. Dr. Haile testified:
“[Wjhere there is what I would call a clean-cut surgery, where there is not a lot of distortion of anatomy by pathology, such as cancer or tuboovarian abscesses or something in the pelvis that would really be obliterating the pathology — the anatomy, that I think in the majority of cases, if you go in to — intending to remove an entire ovary that it should be removed.
“... [0]n the other hand, ... there are certainly times when — and this is particularly true with a cyst, where a cyst can push against a normal ovary and pushes it out to the border where when the clamp is put across that some tissue is contained within the clamp or even on the other side of the clamp. So that it just depends on how much the anatomy is distorted by the cyst.
“... [I]t’s certainly conceivable that— particularly when the ovary is wedged up and pushed up right against the tube— where, if you were to try to bring your clamp too far back to assure that you’re removing the entire ovary, you’d have to remove part of the tube; that in that case the clamp is generally — You generally slide it down under the ovary, hoping that you’ve removed it all and fully intending to. But in reality there’s some left behind.
“And obviously in retrospect, I think that’s what happened in this case.”
it * * *
“And I think if — if there was ample tissue away from the ovary that he could have very easily clamped and removed the entire ovary and, in fact, didn’t and just sloppily crossed across the ovary, *276 leaving a portion behind, this would be an outright breach of standard of care.
“On the other hand, if the ovary was closely adherent to the tube, so that to try to get 1 away from the ovary would have involved taking out a portion of the tube, then to leave a portion of ovary behind would be within the standard of care.”
Dr. Haile also testified that from the medical records, he was unable to determine what circumstances Dr. Sanders was faced with at the time of the surgery. Therefore, he was unable to determine if there was a breach of the standard of care. He also stated that the majority of surgeons do not record details about how close pathology, such as an ovarian cyst, would be in relation to surrounding structures.
Looking at Dr. Haile’s testimony as a whole, we conclude that it fails to create a reasonable inference of the facts Brown seeks to prove. See Hines v. Armbrester, 477 So.2d 302 (Ala.1985); Malone v. Daugherty, 453 So.2d 721 (Ala.1984). His testimony does not provide any evidence that Dr. Sanders acted contrary to the recognized standards of professional care in the present case, particularly when viewed in conjunction with his affidavit.
The Browns contend, however, that Dr. Sanders’s deposition testimony is inconsistent with his testimony given in his affidavit. They assert that if his deposition testimony were believed, a jury could find that his conduct was a breach of the standard of care as set out by Dr. Haile.
Dr. Sanders testified at his deposition from his medical records, as follows:
“On opening the abdomen, I palpated the upper abdominal structures, to see if there was any pathology there, felt the edge of the liver, palpated the kidneys, the stomach, the spleen, and the pancreas, and the duodenum, the upper intestines. Did not find any pathology.
“And, then, packed the bowels out of the pelvis, and inspected the uterus, and the tubes, and the ovaries.
“The right ovary was found to be replaced by a five- to six-centimeter chocolate cyst, filled with dark blood. Both tubes were normal in shape, size and configuration. The uterus was normal in shape, size and configuration.”
The Browns contend that after having the benefit of Dr. Haile’s testimony, Dr. Sanders changed his testimony in his affidavit to include information that Ms. Brown’s anatomy was distorted by the cyst “with the ovary wedged up and pushed closely against the tube,” thereby placing his conduct within the required standard of care. She contends that this testimony is inconsistent and presents credibility issues for the jury. We do not agree.
We do not find Dr. Sanders’s testimony to be inconsistent. He was never asked at his deposition to describe the position of the ovary in relation to the tube. Furthermore, his reference to the fact that Ms. Brown’s tubes and uterus were found to be normal in shape, size, and configuration is not inconsistent with the statement that an ovary containing a 5- to 6-centime-ter cyst was “wedged up and pushed closely against the tube.”
The Browns have failed to produce a scintilla of evidence supporting their position. Browning v. Birmingham News, 348 So.2d 455 (Ala.1977). There being no genuine issue of material fact, and Dr. Sanders being entitled to a judgment as a matter of law, we hold that the trial court properly granted summary judgment. Rule 56, A.R.Civ.P.; Houston v. McClure, 425 So.2d 1114 (Ala.1983).
AFFIRMED.
TORBERT, C.J., and JONES, ADAMS and STEAGALL, JJ., concur.