Wal-Mart Stores, Inc. ("Wal-Mart") seeks certiorari review of a judgment of the Court of Civil Appeals, which affirmed a judgment entered on a jury verdict against Wal-Mart in favor of Fannie Irby. Irby sued Wal-Mart, seeking compensation for injuries she sustained when she slipped and fell in spilled shampoo while shopping in the Selma Wal-Mart store. The only claim against Wal-Mart submitted to the jury was a claim of negligence, on which the jury awarded Irby $75,000. Wal-Mart's post-trial motions were overruled by operation of law, and Wal-Mart appealed. In a majority opinion, over the dissent of two judges, the Court of Civil Appeals affirmed the judgment. Wal-Mart Stores, Inc. v. Irby,806 So.2d 1242 (Ala.Civ.App. 2000).
We granted Wal-Mart's petition for certiorari review to consider its assertion that the judgment of the Court of Civil Appeals is in conflict with prior decisions of this Court setting forth the evidentiary framework that is dispositive of slip-and-fall cases, including Hose v.Winn-Dixie Montgomery, Inc., 658 So.2d 403 (Ala. 1995); and Speer v. PinPalace Bowling Alley, 599 So.2d 1140 (Ala. 1992). We reverse and remand.
In Speer, we outlined that framework as follows:
 "[If] the defendants [make] a prima facie showing that they had no actual or constructive notice of the presence of the substance and that they were not derelict in failing to discover and remove the substance, the burden shift[s] to the plaintiff to present substantial evidence that the alleged substance that caused her to fall had been on the floor for such a length of time that constructive notice of its presence could be imputed to the defendants; that the defendants had actual notice that the substance was on the floor; or that the defendants were delinquent in not discovering and removing the substance. . . . If she fail[s] to present substantial evidence of any of those things, the defendants [are] entitled to a [judgment as a matter of law]."
599 So.2d at 1143-44 (emphasis added).
It is undisputed that on June 27, 1996, Irby slipped on shampoo that someone had spilled on the floor and fell in an aisle in which cosmetics were sold. Further, it is undisputed that the shampoo was Wal-Mart merchandise. The dispositive question is whether Irby presented evidence, sufficient to overcome Wal-Mart's motion for a judgment as a matter of law, that Wal-Mart knew, or, in the exercise of reasonable care, should have known, of the presence of the shampoo on the floor in time to prevent her injuries.
Wal-Mart presented the testimony of Shirley Hamil, who, at the time of Irby's fall, was employed by Wal-Mart as an "in-store loss prevention associate." (Reporter's transcript, at 97.) At trial, Hamil testified that "she inspected the substance on the floor and on Irby's shoe and identified the substance as being coconut-based shampoo." Wal-MartStores, Inc. v. Irby, 806 So.2d at 1244.
Hamil also testified that she had been "on her knees" within "10 inches" of the shampoo spill only 5 to 7 minutes before Irby fell, and that she had not noticed anything on the floor. At trial, the following colloquy occurred: *Page 1250 
 "Q. [By counsel for Wal-Mart] Later, were you able to make any determination as to how long the substance had been on the ground?
 "A. [By Hamil] I know the substance couldn't have been there very long because I had been in that area minutes before.
"Q. Why had you been in that area?
"A. I had been watching a potential shoplifter.
 "Q. All right. Where were you positioned when you were watching this potential shoplifter?
 "A. Approximately the same area where the spill was within, I would say, 10 inches of where the spill was.
"Q. Ten inches?
"A. Yes.
 "Q. And how was your body while you were observing the shoplifter?
 "A. I had to get down on my knees so I could look through, on the end of the gondola so I could observe the gentleman that was at the cologne case because he was lifting bottles of cologne and putting them in his pocket.
 "Q. All right. While you were on the ground, what did you observe on the ground?
 "A. Nothing. There was nothing on the ground. I was on my knees in that area.
"Q. And you observed no substance on the ground?
"A. No substances at that time."
(Reporter's Transcript, at 102-03.) Hamil's testimony was sufficient to shift the burden to Irby "to present substantial evidence that the alleged substance that caused her to fall had been on the floor for such a length of time that constructive notice of its presence could be imputed to [Wal-Mart]." Speer, 599 So.2d at 1143.
Irby relies on two items of evidence, which, she contends, satisfy this requirement. The first item consists of her own trial testimony. Specifically, she testified that the shampoo was "sticky and . . . half dry," (Reporter's Transcript, at 83); "like it had been down there sometime," id. at 85; and that it was "clear on the floor." Id. at 76. The second item of evidence is a portion of the testimony of Shirley Hamil. In particular, Irby says: "Ms. Hamil also testified that she could see the tracks of pallet jacks, used to transport merchandise throughout the store, in and around the spill." Brief of Respondent, at 3. We discuss each of these factors in turn.
 I.
In an attempt to demonstrate that the shampoo had been on the floor for the necessary length of time, Irby testified that it was "sticky and . . . half dry," looked as though "it had been down there sometime," and was "becoming clear." This testimony is functionally indistinguishable from the evidence presented in Vargo v. Warehouse Groceries Management, Inc.,529 So.2d 986 (Ala. 1988), and Hose v. Winn-Dixie Montgomery, Inc.,658 So.2d 403 (Ala. 1995).
Vargo was a slip-and-fall case in which this Court affirmed a summary judgment in favor of the defendant, Warehouse Groceries Management, Inc. ("Warehouse Groceries"). There, the plaintiff, Patricia Vargo, slipped and fell in water in front of an ice machine inside a store operated by Warehouse Groceries. Holding that the plaintiff had not met her burden of proof on the issue of notice, this Court stated: *Page 1251 
 "There is no evidence in the record whatsoever that Warehouse Groceries' employees knew the water was on the floor or that it had been there such a length of time as to impute constructive notice. Both Vargo and her witness testified that they had no idea how long the water had been there, except to say that it `looked like it had been there for a while.' For all the evidence put forth, the water may have been dropped or leaked on the floor only minutes before Vargo fell."
Id. at 987 (emphasis added).
Similarly, in Hose, this Court affirmed a summary judgment entered against the plaintiff, Eileen Hose, who slipped and fell while shopping in a store operated by Winn-Dixie Montgomery, Inc. ("Winn-Dixie"), in what Hose described as a "murky liquid substance" that looked as though "people had been walking in it." 658 So.2d at 404. She was unable, however, to "explain what the substance was or what about it indicated that people had been walking in it." Id. at 405. On the other hand, Winn-Dixie presented "the testimony of [a] produce clerk, who testified that he had walked down the aisle 5 to 10 minutes before Hose's accident." Id. This Court stated:
 "Viewing the evidence most favorably to Hose, we hold that Hose failed to present substantial evidence that Winn-Dixie knew, or should have known, before the accident, of the liquid on the floor. In light of the testimony of the produce clerk, who testified that he had walked down the aisle 5 to 10 minutes before Hose's accident, one must conclude that the murky liquid may have been dropped or leaked onto the floor only minutes before Hose fell. Mere conclusory allegations or speculation that a fact exists will not defeat a properly supported motion for summary judgment. Young v. Serra Volkswagen, Inc., 579 So.2d 1337, 1340 (Ala. 1991.) `Bare argument or conjecture will not satisfy [Hose's] burden to offer facts to defeat the motion.' Young, 579 So.2d at 1340, quoting Riggs v. Bell, 564 So.2d 882, 885 (Ala. 1990)."
Hose, 658 So.2d at 405 (emphasis added).
In Speer, the plaintiff slipped and fell in the Pin Palace Bowling Alley ("Pin Palace"). The plaintiff presented no evidence as to the nature or origin of the substance in which she fell. 599 So.2d at 1142-43. Affirming a summary judgment entered in favor of Pin Palace, this Court stated:
 "[W]e hold that the evidence amounts to little more than speculation or conjecture as to the nature of the substance on the floor, as to the length of time the substance was on the floor, and as to whether the defendants were delinquent in not discovering the substance and cleaning it up."
Id. at 1143.
Irby attempts to distinguish Hose and Speer on the ground the identity of the substance in which she fell is known; whereas, in those cases, the identity was never proven. Although this element is distinguishable, it is not dispositive. As we noted in Vargo, the only evidence presented in that case was testimony that the water "looked like it had been there fora while." 529 So.2d at 987 (emphasis added). Thus, Irby's testimony that the shampoo looked as though "it had been down there sometime" is precisely the class of testimony Vargo held to be insufficient.
Irby further relies on the fact that she described the shampoo as "sticky and . . . *Page 1252 
half dry," and as "becoming clear on the floor." Indeed, she presented photographs taken moments after the accident tending to corroborate her testimony that the shampoo was "clear," and the Court of Civil Appeals mentioned the testimony of Wal-Mart employees, who described the shampoo as "milky." Although Irby characterizes this testimony as a "glaring distinction" from Speer, Vargo, and Hose, Brief ofRespondent, at 7, it does not elevate the proof to the requisite level of sufficiency. This is so, because Irby presented noevidence as to whether coconut-based shampoo becomes "sticky" over time if it is spilled on the floor, or, if so, how much time is required for it to do so. Similarly, she presented no evidence that coconut-based shampoo becomes "clear" with age, or, if so, at what age.[1]
Irby relies on Maddox v. K-Mart Corp., 565 So.2d 14 (Ala. 1990), in which this Court held a summary judgment to be inappropriate. There, the plaintiff "slipped and fell near the front customer service desk," in a "wet, slippery, and `sticky,'" substance that "appeared to . . . be a puddle of `Coke'" approximately "two feet wide." Id. at 16 (emphasis added). After the fall, the plaintiff had the "sticky substance" on his clothes and hands. Id. The substance "looked like it was trying to dry," and, indeed, eventually "dried `stiff.'" Id.
Maddox, however, is distinguishable in a number of ways. First, Maddox
was decided under the less stringent "scintilla rule." Here, "substantial" evidence is required. See Ala. Code 1975, § 12-21-12;Speer, 599 So.2d at 1143. Other distinguishing factors are the sizes and locations of the spills. In Maddox, the spill was a "puddle" approximately "two feet wide"; here, there was no testimony as to the amount of substance on the floor. In Maddox, the spill was "near the front customer service desk," that is, in a generally staffed area of the store. Here, the accident occurred in one of the cosmetics aisles. Finally, in addition to the testimony that the substance "looked like it was trying to dry," the plaintiff in Maddox produced evidence of the nature of the substance after it was fully dried, that is, that it eventually "dried `stiff.'" Id. Thus, in Maddox, the size and location of the spill, coupled with evidence, qualitatively different from the evidence here, of the nature of the substance, constituted a scintilla of evidence on which a jury could infer that K-Mart was delinquent in detecting the spill. Maddox is, therefore, distinguishable. Because Irby failed to present evidence demonstrating under what conditions coconut-based shampoo tends to become "sticky" and "clear," her statements that the shampoo was "sticky" and "clear" are merely conclusory, and the photographs purporting to show the shampoo to be "clear" do nothing to buttress the statements. Under our caselaw, this testimony is insufficient as a matter of law as a basis on which to impute notice to Wal-Mart.
 II.
As to the "pallet-jack" evidence, Irby states: "There was further photographic evidence taken by Wal-Mart employees that showed [pallet-jack tracks] or other wheel marks in and around and through the substance."Brief of Respondent, at 8. On the basis of this evidence, we are invited to infer that Wal-Mart employees had been working in the aisle after the spill and before the accident. If, in fact, Irby's *Page 1253 
reading of the record was correct, we might accept that invitation. However, Irby mischaracterizes the testimony on this point.
It was Hamil who testified as to the alleged tracks. She stated:
 "Q. [By Irby's counsel] Can you see in these pictures where it looks like that puddle has tracks through it?
 "A. [By Hamil] To me that looks like scarring on the floor made from our pallet jacks which is all through the store. Our pallet jacks come through that area dropping off merchandise at night and it scars the floor. I don't see any tracks right through the substance itself. I see tracks around it."
(Reporter's Transcript, at 115-16.) (Emphasis added.)
Hamil actually testified that the pallet-jack tracks were made before
the shampoo was spilled. She did not say that there were pallet-jack tracks "through" the shampoo, as Irby urges us to read. Thus, Irby has presented no evidence that Wal-Mart employees walked through the cosmetics aisle between the time of the spill and her accident.
For these reasons, we agree with the dissent in the Court of Civil Appeals, that is, "that Irby did not present substantial evidence indicating that the substance on which she slipped had been on the floor of the store a sufficient length of time to impute constructive notice to Wal-Mart." 806 So.2d at 1247 (Crawley, J., dissenting). Because Wal-Mart was entitled to a judgment as a matter of law, the judgment of the Court of Civil Appeals is reversed and the cause is remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
Houston, See, Lyons, Brown, Harwood, and Stuart, JJ., concur.
Moore, C.J., dissents.
[1] Irby admitted that she did not touch the shampoo with her hands.