28 So.3d 772 (2009)
Shirley P. HALE
v.
KROGER LIMITED PARTNERSHIP I.
2071237.
Court of Civil Appeals of Alabama.
July 2, 2009.
Certiorari Denied August 21, 2009
Alabama Supreme Court 1081369.
*775 Patrick O. Miller and Timothy P. Pittman of Dick Riggs Miller LLP, Huntsville, for appellant.
John P. Burbach and Travis S. Jackson of Sirote & Permutt, P.C., Huntsville, for appellee.

On Application for Rehearing.
MOORE, Judge.
This court's opinion of March 6, 2009, is withdrawn, and the following is substituted therefor.
Shirley P. Hale appeals from a summary judgment entered by the Madison Circuit Court ("the trial court") in favor of Kroger Limited Partnership I in a slip-and-fall action. We affirm.

Procedural History
On April 6, 2007, Hale sued Kroger, seeking damages for personal injuries he alleged he had received when he slipped and fell on spilled baby food in a store owned and operated by Kroger. Hale claimed that his injuries had resulted from the negligence and/or wantonness of Kroger. Kroger filed an answer denying liability and asserting various affirmative defenses. Kroger ultimately filed a motion for a summary judgment on all counts of the complaint, which the trial court granted on July 30, 2008. Hale appealed that summary judgment to the Alabama Supreme Court on September 10, 2008; that court transferred the appeal to this court on September 30, 2008, pursuant to Ala. Code 1975, § 12-2-7.

Issues
On appeal, Hale argues only that the trial court erred in entering the summary judgment on his negligence claim. He waives any claim that the trial court erred in entering the summary judgment on his wantonness claim. In regard to his negligence claim, Hale contends that he presented substantial evidence indicating that Kroger had constructive or actual knowledge of the spill before his fall such that it had a duty to safeguard him and/or that he presented substantial evidence indicating that Kroger was delinquent in not discovering and removing the hazardous condition.

Standard of Review
In Sizemore v. Owner-Operator Independent Drivers Ass'n, 671 So.2d 674 (Ala. Civ.App.1995), this court stated:
"The law regarding summary judgment is well established. A motion for summary judgment tests the sufficiency of the evidence. Such a motion is to be granted when the trial court determines that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Rule 56, [Ala.] R. Civ. P. The moving party bears the burden of negating the existence of a genuine issue of material fact. Melton v. Perry County Board of Education, 562 So.2d 1341 (Ala.Civ.App.1990). Furthermore, when a motion for summary judgment is made and supported as provided in Rule 56, the nonmovant may not rest upon mere allegations or denials of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial. Rule 56(e), [Ala.] R. Civ. P. Proof by substantial evidence is required. Ala. *776 Code 1975, § 12-21-12; Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794 (Ala.1989). The reviewing appellate court must apply the same standard utilized by the trial court when reviewing a summary judgment. Melton, supra. Additionally, the entire record is reviewed in a light most favorable to the nonmovant. Mann v. City of Tallassee, 510 So.2d 222 (Ala.1987)."
671 So.2d at 675.

Facts
In reviewing a summary judgment, this court is limited to a consideration of only the evidence submitted to the trial court when it ruled on the motion for a summary judgment. Bean v. State Farm Fire & Cas. Co., 591 So.2d 17, 20 (Ala. 1991). In the present case, that evidence consisted solely of the affidavit of Jason Perry, the manager of the Kroger store on duty at the time of Hale's fall, and the deposition testimony of Hale.
In his affidavit, Perry stated:
"My name is Jason Perry. I am employed at the Kroger store located at 2007 Drake Avenue, Huntsville, Alabama 35801. I am over the age of 19 and of sound mind. I make this affidavit on my own personal knowledge.
"I am familiar with Mr. Shirley P. Hale, who has brought a lawsuit against Kroger for allegedly falling on spilled carrots in the automatic checkout lane of the Kroger store where I work on Drake Avenue. I was present when the incident occurred on April 9, 2005, involving Mr. Hale.
"At the time of this incident, I was the Manager on Duty at the Drake Avenue store. I am familiar with Kroger's sweep/spot mop procedure for the Drake Avenue store. Kroger has an employee make an inspection of the entire indoor premises of the store. This sweep/spot mop procedure is performed every hour at the store during Kroger's operating business hours. On the day of the incident, Kroger's sweep/spot mop procedure at the Drake Avenue store was performed every hour. Immediately prior to Hale's fall a sweep/spot mop inspection was performed at 6:00 p.m., and there was not any substances or spilled carrots on the floor in or anywhere around the area of the automatic checkout lane where Mr. Hale allegedly fell.
"Neither Kroger nor I as its management had any knowledge or notice of any spilled carrots or other spilled substance on the floor at or near the area of the automatic checkout lane before the time of Mr. Hale's fall. Mr. Hale informed me of the carrots on the floor after his fall. This is when I received knowledge of the carrots, and I immediately had an employee clean-up the area. Mr. Hale did not inform me that he was injured as he alleges in this lawsuit."
Kroger submitted Hale's entire deposition to the trial court. Those portions relevant to the disposition of the summary-judgment motion provide that, on April 9, 2005, Hale, who is 5-foot 7-inches tall and weighed 210 pounds and was 77 years old at the time, visited the Kroger store on Drake Avenue in Huntsville to purchase milk. Hale was wearing what he termed "boat shoes" that he had worn every other day for several years before the accident. The bottom of the shoes were made of rubber and appeared worn and smooth.
According to Hale, he was familiar with the layout of the Kroger store, having shopped there twice a week since 1977. After entering the store on April 9, 2005, Hale went straight down an aisle running parallel to a "square" of four automatic-checkout machines. He stopped at a sales display located at the junction of that aisle *777 with the main cross-aisle of the store. Hale then proceeded to the rear of the store where the coolers were positioned in order to obtain a gallon of milk. Hale then returned to the sales display at the junction of the main cross-aisle and the aisle running next to the four automatic-checkout machines where he picked up a small box containing kitchen items from the sales display. Hale carried those items about 20 or 25 feet to the opening leading into the automatic-checkout area where he intended to serve himself. At that time, two Kroger personnel were in the areaa young female and an approximately 30-year-old male cashier. When he arrived in the area, Hale observed that other patrons were using all four automatic-checkout machines; however, the patron using the last automatic-checkout machine on the left just in front of the cashier appeared to be leaving the area.
As the patron completed her transaction, Hale began walking toward the machine. He was looking up toward the area to which he was walking; he was not looking at the floor. He did not notice any substance on the floor or any cone or other warning of any hazards in the area. No Kroger employee warned him of any spill. When he reached the area around the middle of the entrance to the automatic-checkout area between the first two automatic-checkout machines, Hale slipped and fell to the floor.
While Hale was on the floor, he did not immediately see anything on the floor. He overheard a woman, who he believed to be a customer, say that broken baby-food jars were on the floor. Hale testified that he then observed bright-orange and milky-white baby food laying on the floor in a shallow puddle spreading over an area approximately 18 inches by 15 inches. The puddle appeared to Hale to be fresh, and it had been smeared where Hale had fallen in it. Hale also saw the lid to one jar of baby food, which was still attached to part of the jar, in the middle of the puddle. Hale did not see any broken pieces of the jar.
According to Hale, after the fall, the young female Kroger employee came over, picked up the gallon of milk Hale had dropped during the fall, and offered to assist Hale to his feet. At that time, she informed Hale that "we've called for the mop squad." As Hale was getting up, two young male Kroger employees arrived to clean up the area and to place a cone or warning sign at the site.
Hale testified that he proceeded to checkout. He asked the cashier for paper towels to clean off his leg. He noticed that he had "orange stuff" on the bottom and side of his shoe and also on his right leg, which he assumed was strained carrots. He also discovered a milky-white substance on his right shoe and right leg up to his knee, which he identified as a different type of baby food. That discovery led Hale to conclude that he had slipped in a puddle made by two broken jars of baby food. Hale stated that his right knee had been cut during the fall and that he had bled as well.
Hale testified that he did not know how the puddle of baby food had gotten on the floor. When asked how long the puddle had been there, Hale responded as follows:
"A. [By Hale:] It had been there for several minutes.
"Q. [By counsel for Kroger:] Why do you know that?
"A. Because the girl said we sent for the mop squad, we called for the mop squad.
"Q. Well, I'm asking you this question. Immediately before you fell, okay?
"A. Yes.

*778 "Q. Do you know how long that puddle and the broken jar lid had been there on the floor?
"A. No. I did not see the breaking of the jars.
"Q. So it is fair for me to say that you don't know if any Kroger employee knew that it was on the floor at the time you fell?
"A. Yes.
"[Counsel for Hale]: Wait a second, are you saying yes, somebody did know about it or
"[Hale]: Yes, because when the little girl, the young girl came to pick me up, she said we've sent for the mop squad.
"Q. [Counsel for Kroger]: So your testimony is as to this that after you fell and that girl came to see you from Kroger, okay?
"A. Yes.
"Q. That your testimony is that she noticed that you fell; is that right?
"A. Yes.
"Q. And then she told you we sent for the mop squad; is that right?
"A. Yes.
"Q. Anything else she said?
"A. No.
"Q. Other than that being said, is it fair for me to say you don't know if any Kroger employee knew whether the substance was on the floor before your fall occurred; is that right?
"A. I can't say.
"Q. And you don't know how long it had been there on the floor before your fall, correct?
"A. No.
"Q. And you have no personal knowledge of any Kroger employee knowing how long it was there before you fell, correct?
"A. No.
"Q. Or if they knew it was there before you fell, correct?
"A. Yes, they knew.
"Q. You said yes, they knew, only from the statement this lady gave to you, correct?
"A. Yes.
"Q. And she was going to send the mop squad in after you fell, right?
"A. She said we've called the mop squad.
"Q. After your fall, correct?
"A. Yes."
Hale further testified that he had not informed Kroger of the spill and that he did not know of any other customers who had notified Kroger of the spill before he fell.

Analysis
It is undisputed that Hale, as a patron of Kroger's, was an invitee on its premises at the time of the accident. See Ex parte Kraatz, 775 So.2d 801 (Ala.2000).
"A premises owner owes his invitees a duty to keep the premises in a reasonably safe condition and to warn them of any `defects and dangers that are known to the landowner but are unknown or hidden to the invitee[s].' Prentiss v. Evergreen Presbyterian Church, 644 So.2d [475] at 477 [(Ala.1994)] (emphasis added); and Howard v. Andy's Store for Men, 757 So.2d 1208, 1210 (Ala.Civ. App.2000). A premises owner, however, owes no duty to protect invitees from all conceivable dangers they might face while on the premises because `"[t]he owner of a premises ... is not an insurer of the safety of his invitees ... and the principle of res ipsa loquitur is not applicable. There is no presumption of negligence which arises from the mere fact of an injury to an invitee."' Ex parte Harold L. Martin Distrib. Co., 769 *779 So.2d 313, 314 (Ala.2000) (quoting Tice v. Tice, 361 So.2d [1051] at 1052 [(Ala. 1978)]). See also Kmart Corp. v. Bassett, 769 So.2d 282, 286 n. 4 (Ala.2000) (holding that the principle of res ipsa loquitur does not apply to premises-liability claims).
"Instead, `"[t]he entire basis of an invitor's liability rests upon his superior knowledge of the danger which causes the invitee's injuries. Therefore, if that superior knowledge is lacking, as when the danger is obvious, the invitor cannot be held liable."' Jones Food Co. v. Shipman, 981 So.2d 355, 363 (Ala.2006) (quoting Quillen v. Quillen, 388 So.2d 985, 989 (Ala.1980)). See also Denmark v. Mercantile Stores Co., 844 So.2d 1189, 1194 (Ala.2002); and Lamson & Sessions Bolt Co. v. McCarty, 234 Ala. 60, 63, 173 So. 388, 391 (1937)."
Edwards v. Intergraph Servs. Co., 4 So.3d 495, 503 (Ala.Civ.App.2008).
In Winn-Dixie Store No. 1501 v. Brown, 394 So.2d 49 (Ala.Civ.App.1981), this court stated:
"As the burden of showing negligence rests with the plaintiff, it is necessary to prove: (a) that the foreign substance slipped upon was on the floor a sufficient length of time to impute constructive notice to the defendant, or (b) that the defendant had actual notice of the substance's presence on the floor, or (c) that the defendant was delinquent in not discovering and removing the foreign substance. In the absence of such proof, the plaintiff has not made out a prima facie case that the defendant was negligent in the maintenance of its floors. S.H. Kress & Co. v. Thompson, 267 Ala. 566, 103 So.2d 171 (1957)."
394 So.2d at 50. In the context of a motion for a summary judgment, the movant has the burden of proving such facts as would negate an essential element in the nonmovant's claim or demonstrating that the nonmovant does not have sufficient evidence to support an essential element of his or her claim. Ex parte General Motors, 769 So.2d 903, 909 (Ala.1999).

A. Constructive Knowledge

A storekeeper is charged with knowledge of a hazard if the evidence shows that the hazard has existed on the premises for such a length of time that a reasonably prudent storekeeper would have discovered and removed it. S.H. Kress & Co. v. Thompson, 267 Ala. 566, 570, 103 So.2d 171, 174 (1957). Direct evidence of the length of time the offending substance has remained on the floor is not required. Cash v. Winn-Dixie Montgomery, Inc., 418 So.2d 874, 875 (Ala.1982).
"Under Cash, supra, it is permissible to allow the trier of fact to infer the length of time that the substance had remained on the floor from evidence regarding the nature and condition of the substance. `Where the substance is dirty, crumpled, or mashed, or has some other characteristic[, e.g., is "sticky,"] that makes it reasonable to infer that it has been on the floor a long time, the defendant may be found to have a duty to discover and remove it.' Vargo [v. Warehouse Groceries Mgmt., Inc., 529 So.2d 986, 986 (Ala.1988)]."
Maddox v. K-Mart Corp., 565 So.2d 14, 17 (Ala.1990).
Kroger presented concrete evidence negating any inference that the spill had existed for such a long period that Kroger should have detected and removed it. Perry's affidavit testimony establishes that, at 6:00 p.m., Kroger had performed its hourly inspection of the area and had found no evidence of a spill. Only minutes later, Hale, following several other patrons into the area, slipped and fell in what he described as a "fresh" puddle of baby food *780 that his foot had smeared. That evidence indicates that the spill had occurred shortly before the accident and that it had not existed for such a length of time that Kroger should have detected the hazard and taken action to safeguard its patrons.
Hale argues that his deposition testimony and the circumstantial evidence establishes a genuine issue of material fact regarding whether the baby-food spill had existed for a sufficient length of time to impart knowledge of it to Kroger. Specifically, Hale points to his testimony that the spill "had been there for several minutes," that it had spread into a 15-by 18-inch puddle, and that two Kroger employees were in the area of the spill. Hale argues that, viewing this evidence in a light most favorable to him, it may be inferred that the spill existed long enough for someone from Kroger to notice it and to have already picked up most of the shards of jar glass. We do not agree.
Although at one point in his deposition Hale testified that the spill had been there for several minutes, he later clarified that he did not actually know when the spill had occurred.
"When reviewing an excerpt of deposition testimony to determine whether it creates a genuine issue of material fact, this court does not consider it abstractly, independently, and separately from the balance of the deposition testimony. See Malone v. Daugherty, 453 So.2d 721 (Ala.1984). Rather, this court must consider the context of the testimony as well as the remainder of the deposition testimony in order to determine if the testimony as a whole creates a reasonable inference to support the proponent's position. See Hines v. Armbrester, 477 So.2d 302 (Ala.1985); and Alabama Power Co. v. Smith, 409 So.2d 760 (Ala.1982).
"Moreover, the deposition testimony as a whole must satisfy the `substantial evidence' standard by carrying `such weight and quality that fair-minded persons in the exercise of impartial judgment [could] reasonably infer the existence of the fact sought to be proved.' West v. Founders Life Assurance Co. of Florida, 547 So.2d [870] at 871 [(Ala. 1989)]. See Ala.Code 1975, § 12-21-12. A nonmovant cannot rely on deposition testimony that is internally inconsistent and contradictory to create a genuine issue of material fact. See Caskey v. Colgate-Palmolive Co., 438 F.Supp.2d 954, 975 n. 6 (S.D.Ind.2006) (citing Buie v. Quad/Graphics, Inc., 366 F.3d 496, 505 n. 5 (7th Cir.2004), in turn citing United States v. 1980 Red Ferrari, 827 F.2d 477, 480 n. 3 (9th Cir.1987)). Deposition testimony may be disregarded at the summary-judgment stage if it is so inconsistent that it could not be believed by any reasonable person. See Jeffreys v. Rossi, 275 F.Supp.2d 463, 476-77 (S.D.N.Y.2003). Although this rule ordinarily applies when a party submits an affidavit that is inconsistent with prior deposition testimony, it may also be applied to testimony from the same deposition. See Continental Eagle Corp. v. Mokrzycki, 611 So.2d [313] at 317 [(Ala. 1992)] (holding that contradictory deposition testimony would be considered when deponent adequately explained conflict)."
McGough v. G & A, Inc., 999 So.2d 898, 905-06 (Ala.Civ.App.2007). Not focusing on the excerpt from Hale's deposition in which he testified that the spill had existed for "a few minutes," but instead viewing the entirety of Hale's testimony, it is apparent that any statement Hale made as to the actual length of time the spill existed is mere conjecture or surmise, which this court may not consider as substantial evidence in order to defeat a motion for a *781 summary judgment. See Casey v. McConnell, 975 So.2d 384 (Ala.Civ.App.2007).
Hale next argues that the size and location of the puddle imparted constructive knowledge to Kroger of its presence. In Maddox v. K-Mart Corp., supra, our supreme court found a "scintilla" of evidence indicating that a puddle had been left on the floor long enough to infer that K-Mart had constructive knowledge of its existence.[1] Although Hale claims that the Maddox court based its conclusion on the size of the puddle, which was about two feet wide as set out in the facts of the case, 565 So.2d at 16, in actuality the court relied on the fact that the puddle appeared to be "`Coke' and was `sticky' and `looked like it was trying to dry'" as "evidence from which the trier of fact could infer that the substance had been there long enough that the defendant's employees should have known it was there." 565 So.2d at 17. The supreme court did not rely on the size of the puddle.
Nevertheless, in Ex parte Wal-Mart Stores, Inc., 806 So.2d 1247 (Ala.2001), in distinguishing that case from Maddox, the supreme court noted that, among other evidence, the size of the spill in Maddox presented a scintilla of evidence of constructive knowledge. 806 So.2d at 1252. That excerpt suggests that the size of the spill can be a factor in assessing whether a reasonable storekeeper should have discovered the hazard in time to protect the patrons of the store.
However, the opinion in Wal-Mart clarifies that other factors beyond the size of the spill should be considered. The supreme court noted in Wal-Mart that the spill at issue in Maddox had occurred "`near the front customer service desk,' that is, in a generally staffed area of the store." 806 So.2d at 1252. The supreme court also noted that the plaintiff in Maddox had proved that the substance in which she stepped had been drying and that it had eventually "`dried stiff'" on the plaintiff's clothing. Id. According to the Wal-Mart court, it was the combination of those factors that led the supreme court to reverse the summary judgment for the storekeeper in Maddox.
In this case, the puddle made by the spill occurred at the entrance of the automatic-checkout area. As the term suggests, that area was reserved for customers to serve themselves without the aid of Kroger personnel. Hale did not present any evidence indicating the number of employees regularly assigned to that area, but he did present evidence indicating that one cashier was stationed at the left end of the area and another female employee was nearby. As to those employees, Hale did not present any evidence indicating the distance of their work stations from the spill or any evidence indicating their ability to observe the spill from their locations. Hale did not present any evidence indicating that the spill, due to its size or any other factor, would have been easily or immediately noticeable to those employees from their vantage points.
As earlier indicated, Hale testified that the spill appeared "fresh" to him. That testimony, along with Perry's affidavit testimony stating that no spill had been discovered only minutes earlier during the inspection process, indicates that the spill had not been present for a long period before the accident. Given the absence of any evidence indicating that the size and location of the spill should have alerted the Kroger employees in the area to its presence *782 in the relatively short period between the spill and Hale's fall, we conclude that Hale did not present substantial evidence, i.e., "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved," West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala. 1989); see also Ala.Code 1975, § 12-21-12(d), indicating that Kroger had constructive knowledge of the hazard.

B. Actual Knowledge

Kroger likewise presented evidence indicating that it did not have prior actual knowledge of the baby-food spill. Perry testified in his affidavit that Kroger had first learned of the existence of the spill after Hale fell. In response, Hale argues that he presented substantial evidence indicating that Kroger actually knew of the spill. First, Hale contends that the circumstantial evidence indicates that a Kroger employee had already partially cleared the spill. Second, Hale maintains that the statement of the young female employee indicates that Kroger already knew of the spill before his fall.
Hale's testimony does not create an inference that a Kroger employee observed the spill and initiated clean-up. Hale testified merely that he did not see any shards of glass other than the large part of the jar attached to the lid in the middle of the puddle of baby food. Hale argues that, from that bare information, a reasonable juror could infer that someone had cleared parts of the broken baby-food jar and that, based on that inference, a reasonable juror could further infer that the "someone" was a Kroger employee. However, under Alabama law, "`"[a]n inference cannot be derived from another inference."'" Systrends, Inc. v. Group 8760, LLC, 959 So.2d 1052, 1074 (Ala.2006) (quoting Khirieh v. State Farm Mut. Auto. Ins. Co., 594 So.2d 1220, 1224 (Ala.1992), quoting in turn Malone Freight Lines, Inc. v. McCardle, 277 Ala. 100, 107, 167 So.2d 274, 281 (1964)).
As to the young female employee's statement that "we've called the mop squad," neither Hale nor Kroger presented any direct evidence indicating when that call had been made. However, Perry's affidavit testimony indicates that the call could not have been made before the accident because "neither Kroger nor [Perry] as its management" actually knew of the spill before Hale's fall. Hale testified that he took the statement to mean that the mop squad had been called to clean up the spill before his accident. Hale argues that our standard of review, which requires us to view the facts in a light most favorable to the nonmovant, compels us to side with his version of the events, rendering summary judgment inappropriate.
"`"[W]hen the facts, although undisputed[,] are such that reasonable men may reasonably and conscientiously arrive at opposite conclusions from them, such facts present, not a question of law for the court, but a question of fact for the determination of the jury."'" Cooper v. State, 393 So.2d 495, 497 (Ala.Crim.App.1981) (quoting Pate v. State, 32 Ala.App. 365, 366, 26 So.2d 214, 215 (1946), quoting in turn Stearne v. State, 4 Ala.App. 154, 155, 58 So. 124, 124 (1912)); see also Folmar v. Montgomery Fair Co., 293 Ala. 686, 309 So.2d 818 (1975) (holding that when reasonable persons could differ on inferences to be drawn from undisputed facts, summary judgment is inappropriate). Whether that rule should be applied to this case depends on whether Hale's understanding that the mop squad had been called before his accident is a "reasonable" inference, which Hale conceded at oral argument is a question of law to be decided by this court.
*783 An inference is a conclusion derived by reasoning from premises or evidence. Payne v. State, 683 So.2d 440, 452 (Ala.Crim.App.1995). "An `inference' is a reasonable deduction of fact, unknown or unproved, from a fact that is known or proved." Khirieh v. State Farm Mut. Auto. Ins. Co., 594 So.2d at 1224 (citing Malone Freight Lines, Inc. v. McCardle, 277 Ala. 100, 167 So.2d 274 (1964)). A reasonable inference requires an "explanation that is both consistent with the evidence and agreeable to common sense." Payne, 683 So.2d at 453. Hale presented no evidence from which he or a juror could reasonably infer that the Kroger employee meant that the mop squad had been called to the scene before his fall. Hale did not present any evidence indicating where the mop squad was located when it was called, the method by which the mop squad was called, or the length of time it would have taken the mop squad to travel to the site of the accident. Hale testified that the mop squad arrived when he was getting to his feet, but he did not testify as to how long that took. Nothing about the circumstances of the mop squad's arrival indicates that the mop squad must have already been en route to the site before the fall occurred.
Hale bore the burden of presenting "substantial evidence" indicating that Kroger actually knew of the spill before he slipped and fell. Hale's mere belief that Kroger actually knew of the spill, based solely on the naked statement of the Kroger employee that "we've called the mop squad" and without any other supporting direct or circumstantial evidence, does not constitute sufficient evidence to withstand Kroger's motion for a summary judgment.

C. Delinquent Inspection

Finally, Kroger presented evidence indicating that it was not delinquent in failing to discover and remove the baby-food spill. Perry testified in his affidavit that Kroger had implemented a sweep/spot mop inspection procedure by which employees inspected the store during business operating hours on an hourly basis. Perry further attested that an inspection had been performed according to that procedure at 6:00 p.m. and that the spill had not been detected as a result of the inspection.
In response, Hale argues that the mere presence of the spill creates a genuine issue of material fact regarding whether Kroger's inspection was adequate based on the holdings in King v. Winn-Dixie of Montgomery, Inc., 565 So.2d 12 (Ala.1990), and Strahsburg v. Winn-Dixie Montgomery, Inc., 601 So.2d 916 (Ala.1992). Those two cases do not establish the rule of law Hale posits. Rather, under Alabama law, the mere presence of an offending substance does not automatically give rise to liability. See Brown, supra. Hale has not presented any evidence to indicate that Kroger's sweep/spot mop inspection procedure was inadequate or that it was performed inadequately on the day of his fall. Without such evidence, he has failed to present a genuine issue of material fact regarding Kroger's alleged delinquency in failing to discover and remove the baby-food spill.
For the foregoing reasons, we affirm the summary judgment entered by the trial court.
APPLICATION GRANTED; OPINION OF MARCH 6, 2009, WITHDRAWN; OPINION SUBSTITUTED; AFFIRMED.
PITTMAN, BRYAN, and THOMAS, JJ., concur.
THOMPSON, P.J., dissents, with writing.
*784 THOMPSON, Presiding Judge, dissenting.
As the main opinion notes, our standard of review of the trial court's summary judgment requires that we view the evidence in the light most favorable to Shirley Hale as the nonmovant. See Hanners v. Balfour Guthrie, Inc., 564 So.2d 412, 413 (Ala.1990). I agree with the main opinion that, even under that view of the evidence, Hale failed to make out a genuine issue of material fact as to whether Kroger employees had constructive notice of the baby-food spill that caused Hale's alleged slip-and-fall injuries. I disagree with the main opinion's conclusion, however, that the evidence before the trial court, when viewed in the light most favorable to Hale, failed to establish a genuine issue of material fact as to whether Kroger employees had actual notice of the baby-food spill. Simply put, I believe that a jury presented with the evidence that was before the trial court could reasonably conclude that Kroger employees were aware of the baby-food spill before Hale slipped in it. Therefore, I must respectfully dissent.
NOTES
[1] Maddox involved an incident that occurred on November 29, 1985. Effective June 11, 1987, the scintilla rule was abolished in favor of the substantial-evidence rule. See § 12-21-12, Ala.Code 1975.